**Opinion issued April 26, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00368-CR

_____

**DONALD JAMES BURD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Case No. 09CR3091**

---

## O P I N I O N

Appellant Donald Burd appeals a judgment convicting him of deadly conduct. *See* TEX. PEN. CODE ANN. § 22.05(b)(2) (West 2009). Burd was indicted

for aggravated assault with a deadly weapon. The jury acquitted him of that charge but found him guilty of the lesser included offense of deadly conduct.

Burd raises two issues on appeal; both relate to the trial court's charge. First, he contends he was egregiously harmed by the trial court's failure to include an instruction applying the law of self-defense to the lesser included offense of deadly conduct. He argues that the jury found in his favor on the self-defense issue, as demonstrated by its not-guilty finding on the aggravated assault charge, and that the jury would have acquitted him of both charges had it been instructed that self-defense also applied to the lesser included charge of deadly conduct. Second, he maintains he was egregiously harmed by the trial court's failure to instruct the jury that the presumption of recklessness applicable to deadly conduct was permissive, not mandatory.

We conclude that the trial court's error in failing to instruct the jury that self-defense applies to both offenses egregiously harmed Burd, and, accordingly, we reverse the trial court's judgment.

## Background

On August 23, 2009, police officers responded to a report of a disturbance at Burd's home. When they arrived, an agitated Burd explained that he had an altercation with Clarence Patterson over Burd's girlfriend, Deanna Sellers Weir, who also had been Patterson's on-again-off-again girlfriend for many years. This

was not their first run-in, and Burd knew from their previous incidents that Patterson was physically much bigger than Burd.

Patterson, Weir and Burd all testified at trial, but their testimony conflicted in some respects. Patterson testified Weir had left him shortly before the incident to begin a relationship with Burd. According to Patterson, Weir called on the day of the incident and asked him to come to Burd's house to pick her up. Upon arriving at Burd's house, Patterson pulled into the driveway. Burd walked out of the house and, according to Patterson, pointed his gun at Patterson and told him to get out of the driveway. Patterson backed out of the driveway in order to wait for Weir on the road outside Burd's home. Burd then walked toward Patterson's car and, as he did, Patterson began to back up again and said, "Hey, I'm not in your driveway anymore." According to Patterson, he put the car in reverse and was in the process of backing away from Burd when Burd fired two shots at Patterson's car. Weir had come to the end of the driveway by this point and, when Patterson saw Burd "handling her," Patterson "pulled forward kind of rapidly." According to Patterson, he did not pull forward to threaten Burd with his car, but, rather, because he saw Burd "handling" Weir and wanted to rush forward to allow Weir to safely get in the car before Burd hurt her.

Burd approached the car and tapped his pistol on the window, at which point Patterson stepped out of the car, told Burd that the police were on their way, and

3

said, "If you want to shoot me I guess shoot me. Leave her alone." Burd walked into his house and Patterson drove away, with Weir. Photographs admitted at trial show tire marks near the edge of Burd's grassy front yard; Patterson acknowledged making them with his car, but claimed he made them *after* Burd fired shots, as Patterson pulled forward to allow Weir to get into the car.

Weir's account corroborated Patterson's in some, but not all, respects. She testified that when Patterson arrived he pulled into Burd's driveway but did not get out of the car. Burd went outside to confront Patterson with gun in hand. After Burd and Patterson exchanged words that Weir was unable to hear, Patterson backed out of the driveway and pulled onto the road to wait for Weir. Burd walked toward Patterson's car again and the two men exchanged words as Weir walked out of the house and began to make her way down the driveway with her belongings.

Weir was intending to get in the car "and then [Patterson] took off in the car and I thought he had left and then he backed up to come get me." According to Weir, Patterson turned the car around before coming back for her. At that point, Burd walked toward Patterson's car, aiming at Patterson, and fired once, as Patterson was moving in reverse. Then as Burd walked back up the driveway, Patterson pulled forward and yelled, "Come on," and Weir got into the car and left. Weir denied that Patterson made tire marks in Burd's yard, and she testified that

4

Patterson never attempted to drive over Burd with his car. She said that Burd did not place a hand on her, and added that Burd is not a violent person.

Burd took the stand and claimed self-defense. He testified that he has been licensed to carry a handgun since 1994, has held the same job for twenty-six years, and has been battling cancer since 2001. On the day of the incident, he had just returned home from a friend's house when Weir told him she was leaving. Burd did not know it was Patterson who was coming to get Weir until Patterson pulled into the driveway and parked about two feet from the end of Burd's truck. At that point, Burd stepped onto the front porch with gun in hand and, without pointing it at Patterson, asked Patterson to leave.

According to Burd, Patterson backed out of the driveway and continued backing up on the road, past the driveway of the neighboring lot. Burd was standing at the end of his driveway when Patterson "revved his engine and raced his car toward [Burd]." When Burd saw Patterson's car coming toward him, he fired his gun in the direction of Patterson's car and jumped out of the way, toward his house, and then retreated into the house.

Burd testified that he fired at Patterson's car because he believed Patterson's car was about to hit him, and he was afraid for his life. He also testified that he did not know where Weir was when Patterson raced the car toward him, and he denied "handling" her on that day or any other day. Thus, Burd contradicted Patterson's

5

claim that Patterson pulled forward to intervene or rescue Weir from Burd's "handling" of her.

Sergeant Eric Bruss, who supervised the investigation, interviewed all three witnesses and discovered a shell casing and a cup in the roadway. Police officers were unable to find any bullet. Burd gave Bruss consent to enter the house, and he retrieved the gun from underneath a blanket on the couch.

The trial court submitted aggravated assault and the lesser included offense of deadly conduct. The trial court also included instructions in the charge on self-defense and provocation. Neither party objected to any portion of the charge. The jury acquitted Burd of aggravated assault but returned a guilty verdict on deadly conduct. The trial court sentenced Burd to six years' imprisonment and a $3,000 fine, both of which were probated. Burd appealed.

## Discussion

Burd argues that the trial court's charge contained two errors. Conceding that he did not raise either issue before the trial court, he asserts these errors caused egregious harm and, thus, amount to fundamental and egregious error warranting reversal despite his failure to object.

### A.     Standard of Review

In analyzing a jury-charge issue, our first duty is to decide if error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g);

6

*Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Only if we find error do we then consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Error properly preserved by a timely objection to the charge will require reversal "as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals has interpreted this to mean that *any* harm, regardless of degree, is sufficient to require reversal. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). However, when the charging error is not preserved "and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171.

Fundamental errors that result in egregious harm are those which affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect his defensive theory." *Id.* at 172. When considering whether a defendant suffered egregious harm, the reviewing court must consider: (1) the entire jury

7

charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* at 171. The reviewing court must conduct this examination of the record to "illuminate the actual, not just theoretical, harm to the accused." *Id.* at 174.

## B.     Analysis

*The parties' contentions*

In his first point of error, Burd asserts that he was egregiously harmed by the trial court's failure to apply self-defense to the lesser included offense of deadly conduct. Specifically, Burd maintains that, because he did not deny firing the gun in Patterson's direction, the case turned on his contention that he fired in self-defense. Burd further argues that the jury's acquittal on aggravated assault—the offense to which the charge expressly stated that self-defense *did* apply—demonstrates that the jury found for Burd on the self-defense issue but incorrectly believed it could not acquit Burd of deadly conduct on that basis.

The State does not dispute that the trial court was required to instruct the jury of the applicability of self-defense to both offenses. Rather, it responds that the charge in this case, like the one in *Ross v. State*, 763 S.W.2d 897 (Tex. App.—Dallas 1988, pet. ref'd), adequately informed the jury that self-defense applied to each offense. The State also maintains that even if the charge contained error, the

8

error was not fundamental because self-defense was a highly contested issue and the jury was well aware of the defense and how to apply it.

*The trial court's charge*

The instructions in the charge spanned seven pages. The charge defined the offense of aggravated assault,[1] set forth a paragraph applying the abstract law of aggravated assault to the case, and then instructed the jury that, if the State had not proven that Burd committed the offense of aggravated assault beyond a reasonable doubt, it should go on to consider whether Burd was guilty of the lesser offense of deadly conduct.

The next portion of the charge defined the offense of deadly conduct[2] and set forth a paragraph applying the abstract law of deadly conduct to the case. Following this application paragraph, the jury was instructed, "Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.'"

Next came the instructions on self-defense and provocation. These stated:

---

[1]     A person commits aggravated assault if he or she intentionally or knowingly threatens another with imminent bodily injury and uses or exhibits a deadly weapon during the commission of the assault. *See* TEX. PEN. CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (West 2011).

[2]     A person commits the offense of deadly conduct if he or she "knowingly discharges a firearm at or in the direction of: (1) one or more individuals; or (2) a habitation, building, or vehicle and is reckless as to whether the habitation, building or vehicle is occupied." TEX. PEN. CODE ANN. § 22.05(b).

9

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree that the actor reasonably believes the force is immediately necessary to protect oneself against the other person's use or attempted use of unlawful force.

A person is justified in using deadly force against another if the actor would be justified in using force against the other in the first place, *as above set out*, and when the actor reasonably believes that such deadly force is immediately necessary to protect oneself against the other person's use or attempted use of unlawful deadly force.

"Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as defendant.

"Deadly force" means the force that is intended or known by the persons using it to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury.

If you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that he was in danger of death or serious bodily injury, or that a reasonable person in defendant's situation at the time and place in question would have retreated before using deadly force against Clarence Patterson, or that defendant, under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Clarence Patterson's use or attempted use of unlawful deadly force, then you should find against the defendant on the issue of self-defense.

You are further instructed as part of the law of this case, and as a qualification of the law on self-defense, that the use of force by a defendant against another is not justified if the defendant provoked the other's use or attempted use of unlawful force, unless (a) the defendant abandons the encounter, or clearly communicates to the other his intent to do so, reasonably believing he cannot safely abandon the encounter, and (b) the other person, nevertheless, continues or attempts to use unlawful force against the defendant.

So, in this case, if you find and believe from the evidence beyond a reasonable doubt that the defendant, DONALD JAMES BURD, immediately before the difficulty, then and there did some act, or used some language, or did both, with the intent on his, the defendant's, part to produce the occasion for using deadly force against Clarence Patterson, and to bring on the difficulty with the said

10

Clarence Patterson, and that such words and conduct on defendant's part, if there were such, were reasonably calculated to, and did, provoke a difficulty, and that on such account Clarence Patterson attacked defendant with deadly force, or reasonably appeared to defendant to so attack him or to be attempting to so attack him, and that the defendant then used deadly force against Clarence Patterson by firing a firearm at him and the vehicle he occupied, in pursuance of his original design, if you find there was such design, then you will find the defendant guilty of Aggravated Assault.

On the other hand, if you find from the evidence that the acts done or language used by the defendant, if any, were not, under the circumstances, reasonably calculated or intended to provoke a difficulty or an attack by Clarence Patterson upon the defendant, or if you have a reasonable doubt thereof, then, in such event, defendant's right of self-defense would in no wise [sic] be abridged, impaired, or lessened, and, if you so find, of if you have a reasonable doubt thereof, you will decide the issue of self-defense in accordance with the law on that subject given in other portions of this charge, wholly disregarding and without reference to the law on the subject of provoking the difficulty.

A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force. (emphasis added)

The final paragraph significant to our analysis immediately followed and

applied the law of self-defense to the offense of aggravated assault, as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of August, A.D., 2009, in Galveston County, Texas, the defendant, DONALD JAMES BURD, did then and there intentionally or knowingly threaten Clarence Patterson with imminent bodily injury by threatening to kill the said Clarence Patterson while pointing and firing a handgun at Clarence Patterson and the vehicle occupied by the said Clarence Patterson, and the Defendant did then and there use or exhibit a deadly weapon, to-wit: a handgun, during the commission of said assault, but you further find from the evidence, or you have a reasonable doubt thereof, that at the time the

11

defendant was under attack or attempted attack from the complainant, Clarence Patterson, and that the defendant reasonably believed, as viewed from his standpoint, that such deadly force as he used, if any, was immediately necessary to protect himself against such attack or attempted attack, and so believing, he pointed and fired a handgun at Clarence Patterson and the vehicle occupied by Clarence Patterson, then you will acquit the defendant and say by your verdict "not guilty."

The charge included no corresponding paragraph applying the law of self-defense to deadly conduct. When the trial court asked whether there were any objections to the charge being read to the jury, neither party objected.

*Was there error in the charge?*

Under *Almanza*, our first duty is to determine whether there was error in the charge. *Tottenham*, 285 S.W.3d at 30. We conclude that there was. In *Jordan v. State*, 782 S.W.2d 524 (Tex. App—Houston [14th Dist.] 1989, pet. ref'd), the defendant was indicted for murder, and the jury received charges on murder, involuntary manslaughter, and criminally negligent homicide, as well as instructions on the justifications of self-defense and defense of property. *Id.* at 525. The application paragraph, however, applied self-defense only to murder, and not to involuntary manslaughter, the offense of which Jordan was convicted. *Id.* at 526. The court of appeals held the trial court's failure to apply self-defense to involuntary manslaughter in the jury charge was error. *Id.* at 527 (reasoning that "[b]ecause the charge applied self-defense only to murder, the charge may have

misled the jury as to the applicability of self-defense to any lesser included offenses, including involuntary manslaughter").

The State argues *Jordan* does not control and urges us to follow *Ross v. State*, instead. In *Ross*, the trial court failed to apply self-defense to the lesser included offenses, including voluntary manslaughter, the offense for which Ross was convicted. *Ross*, 763 S.W.2d at 902. Ross timely objected in the trial court, but the court of appeals found the trial court's failure was not error or, alternatively, was not harmful error, because the charge made clear that the justification defense applied to all of the offenses in the charge. *Id*. at 902–03. Specifically, the charge in *Ross* said: "It is a defense to this prosecution if the defendant's conduct was justified by law. *This applies to any alleged offense set forth in the court's charge*." *Id*. at 902 (emphasis in original). The Dallas Court of Appeals concluded, in light of this instruction, that the failure to apply Ross's justification defense individually to each lesser included offense did not mislead the jury as to the applicability of self-defense to voluntary manslaughter. *Id*. at 903.

The State argues that the charge in this case contained an instruction "analogous to the one in *Ross*" that informed the jury that self-defense applied to both offenses. According to the State, the emphasized phrase in the above-quoted

13

self-defense instructions—"as above set out"— communicated to the jury that self-defense applied not only to aggravated assault but also to deadly conduct.

The phrase "as above set out," when considered in context, however, can have only one plausible reading—it refers to the immediately preceding paragraph, which describes when a person is justified in using force (as opposed to deadly force). We thus reject the State's argument that the trial court's use of the phrase "as above set out" informed the jury that self-defense applied to both offenses. The absence of such an instruction distinguishes *Ross* from this case.

Because the charge did not apply self-defense to the lesser included offense of deadly conduct and did not otherwise inform the jury that self-defense applied to both offenses in the charge, we hold there was error in the charge. *Jordan*, 782 S.W.2d at 527.

*Is the error egregious?*

Having concluded there was error in the charge, we now examine the degree, if any, to which the error harmed Burd. It is undisputed that Burd did not preserve the error; accordingly, Burd bears the burden to demonstrate that the error caused him egregious harm, i.e., deprived him of a fair trial or vitally affected a defensive theory. *See* TEX. CODE CRIM. PROC. ANN. § 36.19 (when reviewing the jury charge on appeal, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or

14

unless it appears from the record that the defendant has not had a fair and impartial trial"); *Almanza*, 686 S.W.2d at 171 ("[I]f no proper objection was made at trial and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'"); *see also Woodard v. State*, 322 S.W.3d 648, 658 (Tex. Crim. App. 2010) (citing *Almanza*, 686 S.W.2d at 171–72 ("[W]hen no proper objection is made to jury-charge error at trial, a defendant may obtain a reversal only in those few situations where the error is 'fundamental' or is 'egregious[ly] harmful.'").

We note at the outset that *Jordan* does not dictate reversal in this case because Jordan preserved the charge error by timely objecting in the trial court, while Burd did not. *Jordan*, 782 S.W.2d at 525. Jordan, therefore, was not required to show egregious error to obtain a reversal. Burd, on the other hand, must do so, by showing that the error created such harm that he did not have "a fair and impartial trial" or that the error affected "the very basis of the case," deprived him of a "valuable right," or "vitally affected his defensive theory." *Almanza*, 686 S.W.2d at 171–72. To determine whether the charge error amounts to egregious error, we consider, in turn, the entire jury charge, the state of the evidence, counsel's argument, and any other relevant information revealed by the record of the trial as a whole. *Id*. at 171.

15

1.    The charge

We find two aspects of the charge noteworthy.  First, and most importantly, it did not inform the jury that Burd should be acquitted of both offenses if the jury had a reasonable doubt about whether he fired the gun in self-defense.  Because the charge applied self-defense to aggravated assault but not deadly conduct, the jury was misled as to the applicability of self-defense to the latter.

Second, Burd contends, and the State does not dispute, that the charge contained another, different error—it did not instruct the jury that the Section 2.05 presumption, which applied only to the deadly conduct charge, was permissive.[3]

---

[3]    Section 2.05(a)(2) of the Texas Penal code, entitled "Presumption," provides:

> (2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:
>
> > (A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;
> >
> > (B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;
> >
> > (C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and
> >
> > (D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not  consider the presumption for any purpose.

16

Our analysis of the entire charge leads us to conclude that the first *Almanza* factor weighs in favor of finding egregious harm.[4]  *See Villarreal v. State*, No. 04-11-00771-CR, 2012 WL 6028981, at *7 (Tex. App.—San Antonio Dec. 5. 2012, no pet.) (finding that jury charge, when considered as whole, weighed in favor of finding egregious harm where nothing in charge alerted jury to presumption of reasonableness as it related to self-defense, thus significantly undermining Villarreal's sole defense, and self-defense charge contained second error).

---

TEX. PEN. CODE ANN. § 2.05(a)(2) (West 2011).  Pursuant to this section, the trial court was required to instruct the jury that on the offense of deadly conduct, it was permissive, but not mandatory, for the jury to presume recklessness and danger upon a finding that a firearm was used.  *See* TEX. PEN. CODE ANN. § 22.05(c) ("Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded."); *Webber v. State*, 29 S.W.3d 226, 230 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (citing *Willis v. State*, 790 S.W.2d 307, 309 (Tex. Crim. App. 1990)) (concluding that both the United States and Texas Constitutions require the trial court to include a section 2.05(a)(2) instruction when instructing the jury on a presumed fact under section 22.05(c) because, without a section 2.05(a)(2) instruction, the section 22.05(c) instruction contains a mandatory presumption, which is unconstitutional).

[4]  We have located no binding authority suggesting that the presence of a second, distinct error in the charge weighs in favor of finding egregious error.  We nevertheless consider this second error in light of *Almanza's* directive to examine "the entire jury charge" and "any other relevant information revealed by the record of the trial as a whole."  *Almanza*, 686 S.W.2d at 171.

17

2.    The evidence

Burd admitted knowingly discharging his gun in the direction of Patterson, whom Burd testified was driving directly at him with his car.  He thus admitted having committed each of the elements of the offense of deadly conduct.  *See* TEX. PEN. CODE ANN. § 22.05(b) (noting that person commits offense of deadly conduct "if he knowingly discharges a firearm at or in the direction of . . . one or more individuals . . . or . . . a vehicle and is reckless as to whether the . . . vehicle is occupied").  Conviction on that charge was thus a foregone conclusion, unless Burd could create reasonable doubt on the self-defense issue.  *See* TEX. PEN. CODE ANN. § 2.03(d) ("If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted."); *see also Alonzo v. State*, 353 S.W.3d 778, 781 (Tex. Crim. App. 2011) ("If there is some evidence that a defendant's actions were justified under one of the provisions of Chapter 9 [of the Penal Code], the State has the burden of persuasion to disprove the justification beyond a reasonable doubt.").  In short, the question of whether Burd was justified in shooting at the car because it was headed toward him was the central issue in the case.

On that point the evidence conflicted.  Patterson painted Burd as the aggressor, testifying that Burd fired as Patterson was moving away from Burd in

18

reverse. Burd, on the other hand, testified that he fired only because he realized Patterson's car was careening toward him and he was scared for his life.

The photographs of the tire marks demonstrate that Patterson braked suddenly on Burd's lawn—indeed, Patterson concedes pulling forward "kind of rapidly"—but, again, there is conflicting evidence about why Patterson did so. Patterson claimed he accelerated quickly to rescue Weir from Burd, whom he claimed was "handling" Weir, while Burd, who denies having laid a hand on Weir, claimed the tire marks depict where Patterson's car came to rest after Patterson deliberately sped the car forward at him to threaten him.

Weir, for her part, acknowledged that she remained friends with Patterson at the time of trial and that she was unable to hear parts of the men's exchange on the day of the incident. Her testimony, albeit somewhat confusing, corroborated Patterson's testimony insofar as she testified that Burd fired while Patterson was moving the car in reverse. However, Weir denied that Burd handled her during the incident, and her testimony thus did not corroborate Patterson's claim that he made the tire marks in Burd's yard in response to Burd's mistreatment of Weir.

In short, Burd's defensive theory was the only issue in the case and the evidence relating to it was hotly disputed in each detail. This leads us to conclude that the second *Almanza* factor likewise weighs in favor of finding egregious harm. *See Almanza*, 686 S.W.2d at 172 (describing fundamental errors as those which

19

"vitally affect [a] defensive theory"); *see also Villarreal*, 2012 WL 6028981, at *7 (concluding that state of evidence also weighed in favor of finding egregious harm where primary contested issue at trial was whether Villarreal acted in self-defense and conflicting evidence was presented regarding circumstances surrounding the stabbing).

3.     Counsel's argument

In examining the closing arguments, we note that counsel never informed the jury that self-defense applied to both offenses.  Both sides' arguments focused on the elements of aggravated assault and self-defense, with neither side saying much, if anything, about deadly conduct.

With respect to self-defense, Burd's counsel argued that Burd "fired that shot . . . when [Patterson] accelerated" at him.  The State, on the other hand, argued Burd provoked the incident and therefore could not avail himself of the defense.  The prosecutor painted Burd as "a man who lost control and shot in anger" and not one "defending himself or his property."  In particular, the State reminded the jury of the testimony from Patterson and Weir to the effect that Patterson's car was moving away from Burd in reverse when Burd fired the shot, meaning "there [was] no threat . . . [and] no self-defense argument."  Because the arguments focused on the elements of aggravated assault and self-defense, but made no mention of deadly conduct or the applicability of self-defense to deadly

20

conduct, they did nothing to alleviate the potential for jury confusion about the applicability of self-defense to deadly conduct. Therefore, we conclude this factor weighs in favor of finding egregious harm.

4. Other information in the record

We find one other factor relevant. The only difference between the two offenses, in this context, is that aggravated assault required proof of an intentional or knowing threat of imminent bodily injury, while deadly conduct required proof the defendant discharged a firearm at an individual or at a vehicle and was reckless as to whether the vehicle was occupied. *See* TEX. PEN. CODE ANN. §§ 22.01(a)(2), 22.02(a)(2), 22.05(b). Because Burd admitted knowingly firing the gun in Patterson's direction, and Patterson testified that he felt his life was threatened, the evidence amply supported conviction on the aggravated assault charge. The fact that the jury did not convict on aggravated assault suggests that it found for Burd on the self-defense issue but, due to the trial court's error, did not believe self-defense also applied to deadly conduct.

In conducting the harm analysis, we found a similar case, *Alonzo v. State*, No. 13-09-00395-CR, 2012 WL 4758061 (Tex. App.—Corpus Christi Oct. 4, 2012, no pet.) (mem. op, not designated for publication), instructive. In that case, the jury, while deliberating, asked the trial court, in writing, whether self-defense applied to the lesser included offense of manslaughter. The trial court replied that

21

self-defense applied only to murder. *Id.* at *1. The jury acquitted Alonzo of murder but convicted him of manslaughter, and his conviction was affirmed by the court of appeals. *Id.* The Court of Criminal Appeals held the court of appeals "erred by holding that a defendant can be convicted for a lesser-included offense when a fact-finder has acquitted the defendant for the greater offense based on a justification defense, and by holding that a defendant cannot raise the justification of self-defense when charged with manslaughter." *Alonzo*, 353 S.W.3d at 783.

On remand, the court of appeals concluded the trial court's error—informing the jury that self-defense was inapplicable to manslaughter—resulted in egregious harm to Alonzo. *Alonzo*, 2012 WL 4758061, at *6. The court held that "the trial court's error affected the very basis of the case and vitally affected Alonzo's defensive theory that he acted in self-defense because there was significant evidence presented that Alonzo may have acted in self-defense—a factual finding for the jury to decide—and the jury was precluded from making this determination due to error." *Id.*

Here, although the jury here was not expressly instructed that self-defense did not apply to the lesser included offense, the trial court's failure to apply self-defense to deadly conduct in the charge, combined with counsel's failure to clarify the applicability of the defense in closing argument, created a significant possibility that the jury was misled about the applicability of the defense to deadly

22

conduct. Given the centrality of this issue to the case and the conflicting evidence on the issue, we conclude that the trial court's failure to apply self-defense to deadly conduct in the jury charge vitally affected Burd's defensive theory and deprived him of a fair trial, and thus requires reversal.[5] *See Almanza*, 686 S.W.2d at 171–72; *Alonzo*, 2012 WL 4758061, at *6.

We sustain Burd's first issue. Because we have found that Burd was egregiously harmed by the trial court's failure to apply self-defense to the lesser-included offense of deadly conduct, we need not consider Burd's second issue.

---

[5] Although neither party cited the case, we note that the Fourteenth Court of Appeals has held that a trial court's failure to apply self-defense to a lesser-included offense was *not* fundamental error. *See Didion v. State*, 625 S.W.2d 436, 438–39 (Tex. App.—Houston [14th Dist.] 1981, pet. ref'd). We discount the importance of this holding, however, because it is a pre-*Almanza* opinion, and, therefore, not based on the same harm analysis we are bound to use today.

## Conclusion

We conclude that the failure to apply self-defense to the lesser included offense of deadly conduct or otherwise inform the jury that self-defense was applicable to the lesser included offense was error that resulted in egregious harm to Burd. Therefore, we reverse the judgment of the trial court and remand for a new trial.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Publish. TEX. R. APP. P. 47.2(b).