**Adrian Aaron MENDEZ, Jr., Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 01–15–00187–CR**

Court of Appeals of Texas,
Houston (1st Dist.).

Opinion issued April 4, 2017

Discretionary Review Granted
June 28, 2017

Daniel McCrory, The Honorable Kim K. Ogg, Molly Wurzer, for State of Texas.

Kurt B. Wentz, for Appellant.

Panel consists of Chief Justice Radack and Justices Jennings and Bland.

## OPINION

Sherry Radack, Chief Justice

On this day, the Court considered the State's motion for rehearing. The motion is denied. However, we withdraw our opinion and judgment of February 23, 2017, and issue this opinion and judgment in their stead.

A jury acquitted appellant, Adrian Aaron Mendez, Jr., of murder, but found him guilty of the lesser-included offense of aggravated assault and assessed his punishment at 7 years' confinement. On appeal, appellant contends that (1) the evidence is legally insufficient; (2) there was jury charge error that caused him egregious harm, and (3) the trial court abused its discretion in refusing to admit evidence of prior specific acts of violence by the complainant. We reverse and remand.

## BACKGROUND

### The State's Case

On the afternoon of August 5, 2011, appellant went to a convenience store, Chicano's, where he met up with Haley Barry, Haley's boyfriend, Brandon, April Santellana, who was Brandon's sister and whose mother owned the store, and Romero. Haley described the convenience store as a place that she and her friends would hang out and "party." While at the store that day, the members of the group were "eating Xanax bars, snorting cocaine, smoking weed, drinking beer, and [doing] anything they could possibly do." Haley testified that she believed that appellant had been arguing with his girlfriend earlier, but was feeling better because he "was all f***** up from eating all of these [Xanax] bars, and [that] he felt good and he was happy."

Later that evening, the group decided to go to a bar, Barney's, to shoot pool and drink beer. Appellant went home to get ready, and Brandon soon picked up appellant at his apartment. April and Brandon sat in the front seats, and appellant and Haley sat in the back seats. On the way to the club, appellant showed Haley a knife with a three-inch blade that he was carrying in his pocket. He was concerned about whether the club would search him and not let him in if they found the knife. April also heard appellant mention that he was carrying a knife.

While at the bar, appellant's group was joined by "Red" Kelley and "Keykay" Cobio. Haley saw appellant drink about a six-pack of beer and smoke marihuana; April saw him take Xanax. Brandon gave appellant some cocaine. Haley said that, while at the bar, appellant was acting "like a badass, like nobody could stop him from doing anything, like he was on top of the world." Appellant also told Haley that "he felt like killing somebody," but the group "blew off" the comment as a random statement because appellant had not been acting confrontational with anyone. The group stayed at the bar until it closed around 2 a.m. The group then decided to go to the Big Man Diesel Shop, where Red worked, to continue their party.

While appellant and the group he was with had been partying at Chicano's and Barney's, Roger Guzman and Jacob Castillo had been drinking beer at Hooter's Restaurant. Guzman and Castillo had smoked marihuana on the way to the restaurant and at a friend's house after leaving the restaurant. While they were at the friend's house, Red called Castillo and asked them to join the group at the diesel repair shot, and Castillo and Guzman joined the group there at about 3 a.m.

Soon after Castillo and Guzman arrived, a verbal altercation began between Castillo and appellant. The men started yelling at each other, apparently about Castillo's sister, who was living with appellant's brother. Guzman intervened and told them men to "chill," but soon they began swinging at one another. The group did not take the confrontation seriously, with several believing that it was a joke. Haley saw appellant "hit" Castillo first, but she soon learned that appellant had stabbed, not hit Castillo. Castillo began to fight back, swinging at appellant three times. In return, appellant stabbed Castillo multiple times in the neck and side. Both men were

approximately the same size, and neither appeared to have the upper hand in the fight when appellant used the knife. All of the witnesses saw appellant with a knife, but no one saw Castillo with a knife and no knife was found at the scene.

Guzman separated the men, and Guzman and Haley held shirts to Castillo's wounds until Haley dialed 911 and an ambulance arrived. At one point, appellant walked over to Castillo and tried to shake his hand, but Guzman told him to get away.

Keykay, who was standing nearby, backed up when he saw Castillo bleeding because he felt nauseated. Appellant approached Keykay and asked for a ride home, but Keykay refused. Appellant told Keykay, "Hey, well, you're going to take me ... like saying [Keykay did not] have a choice." Keykay was afraid that appellant would hurt him, so he agreed to take appellant home.

When appellant returned home, he was wearing different clothes from when he left. He told his sister Emily, Castillo's girlfriend, that Castillo and another person had been in a fight, but that he, appellant, broke it up. Emily did not see any injuries on appellant, who soon left the apartment with his nephew.

The day after the fight, appellant called Red at the diesel repair shop and asked whether there was surveillance video of the shop. Castillo's father and his cousin, a Houston police officer, were present when appellant called Red. Red refused to destroy the videotapes, but told appellant to come get them in an effort to have appellant come by so he would be arrested. Appellant would not come get the tapes, so Red gave the tapes to appellant's cousin, the police officer, who in turn gave them to the investigating officers.

After the fight, Castillo was taken to Ben Taub Hospital, where it was believed at first that he would survive. However, he was in a coma, and he died two months later without ever regaining consciousness. A medical expert testified that Castillo died from complications caused by the stabbing, including bronchial pneumonia, an abscess in his brain, and a non-healing wound in his armpit area.

### The Defense Evidence

Appellant testified in his own behalf at trial, stating that he had known Castillo for several years and knew that Castillo had a bad reputation for being violent, using guns and knives, and being in a gang. Appellant testified that he had seen Castillo fight with his cousins, brothers, and girlfriends.

Appellant testified that when Castillo arrived at the diesel repair shot, he appeared intoxicated and "pissed off," and said that he was going to "f*** somebody up." Appellant said that when he extended his hand to greet Castillo, Castillo came at him swinging. Knowing Castillo's reputation for violence, appellant testified that he believed Castillo was reaching for a gun, so appellant pulled his knife and stabbed Castillo. He also said that even after Guzman stepped in and stopped the fight, Castillo continued to come after him.

Appellant said that he did not threaten Keykay to get a ride home, and that once home, he washed, changed, and threw his bloody clothes away. He believed that the knife was in his pocket when he did so.

Appellant also denied calling Red and asking him to destroy the surveillance video and asking the group whether he could get into Barney's with a knife.

During the State's case, Guzman testified that he never knew Castillo to carry a gun, so, during the defense's case, appellant elicited evidence that Guzman had, in fact, been with Castillo when Castillo fired several shots from Guzman's car near a nightclub one night.

Appellant also presented evidence from several friends and relatives who were not present the night of the murder, all of whom testified that Castillo had a reputation for violence, using guns and knives, and being in a gang.

The jury acquitted appellant of murder, but found him guilty of the lesser-included offense of aggravated assault, and assessed punishment at 7 years' confinement.

## SUFFICIENCY OF THE EVIDENCE

In his first point of error, appellant contends the evidence is legally insufficient to support his conviction for aggravated assault because he was justified in acting in self-defense.

### Standard of Review and Applicable Law

■ A person commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PE- NAL CODE ANN. § 22.01(a)(1) (West Supp. 2016). A person commits the offense of aggravated assault if he "commits assault as defined in [section] 22.01 and [he] . . . uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2) (West 2011). A knife is not a deadly weapon per se. *See McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000). Therefore, it is the State's burden to not only prove that a knife was used, but that "in the manner of its use or intended use[, it was] capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2016).

Self-defense is statutorily defined: "A person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to

the degree the actor reasonably believes the deadly force is immediately necessary[.]" TEX. PENAL CODE ANN. § 9.32 (West 2011). Section 9.31 provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* at § 9.31 (West 2011).

The defendant has the initial burden to produce some evidence to support a claim of self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). Once the defendant produces some evidence, the burden shifts to the State, which bears the ultimate burden of persuasion to disprove the raised defense. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). Thus, to convict a defendant of murder after he has raised the issue of self-defense, the State is required to prove the elements of the offense beyond a reasonable doubt and to persuade the jury beyond a reasonable doubt that the defendant did not kill in self-defense. *Zuliani*, 97 S.W.3d at 594; *McClesky v. State*, 224 S.W.3d 405, 409 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd).

We review the legal sufficiency of the evidence to support a jury's rejection of a self-defense claim under the *Jackson v. Virginia* standard. *Smith v. State*, 355 S.W.3d 138, 144 (Tex. App.–Houston [1st Dist.] 2011, pet. ref'd) (applying standard to jury's rejection of self-defense claim); *see also Saxton*, 804 S.W.2d at 914 (distinguishing standard of review for defensive claims in which State bears burden of persuasion and affirmative defenses in which defendant bears burden of proof). Under that standard, we must examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reason-able doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In self-defense cases, this requires us to review all of the evidence presented at trial in the light most favorable to the prosecution to determine if any rational trier of fact would have found the essential elements of the charged offense beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914. Further, the court must defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony, as the jury is the sole judge of those matters. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Brooks v. State*, 323 S.W.3d 893, 899–900 (Tex. Crim. App. 2010) (plurality op.). We must be mindful that self-defense is a fact issue to be determined by the jury, and that the jury is free to accept or reject any defensive evidence on the issue. *Saxton*, 804 S.W.2d at 913–14.

### Analysis

Here, appellant admitted that he stabbed Castillo with a knife during a fight. And, it is undisputed that the knife caused serious bodily injury to Castillo when it ruptured his jugular vein. The question presented is whether a reasonable jury could have found against appellant on his self-defense claim.

Appellant claims that there "was ample evidence that [Castillo] was the first aggressor." Specifically, appellant argues that Castillo was intoxicated and "upset for some unknown reason when he arrived and acted more aggressively than the appellant." Appellant also recalls April's testimony that Castillo had said that he "felt like f****** somebody up." Finally, appellant points to evidence of Castillo's reputa-

tion for violence, and that he had on a different occasion "verbally assaulted" a much larger friend and fired a gun near a nightclub.

While this evidence may support appellant's self-defense claim, appellant ignores other evidence that tends to refute self-defense. For example, Haley testified that she saw appellant "hit" Castillo first, but she soon learned that appellant was holding a knife when he "hit" Castillo. Everyone at the scene testified that Castillo was unarmed and no one had seen him with a weapon that day, while many knew that appellant was carrying a knife because he had earlier expressed concern about getting into the bar with it. And, even if the jury believed that Castillo said that he "felt like f****** somebody up," it also heard similar evidence that appellant had told Haley that "he felt like killing somebody." In contrast to appellant's witnesses who testified about Castillo's reputation for violence, the State presented witnesses who testified that Castillo did not have a reputation for violence or carrying weapons. There was also evidence that appellant coerced Keykay into taking him home after the stabbing, and that appellant threw away his bloody clothes and the knife he was carrying. And finally, the jury heard evidence that appellant called Red and asked about destroying any surveillance tapes that the diesel shop might have had.

It was the jury's responsibility to weigh and resolve conflicting evidence, assess witness credibility, and draw reasonable inferences in reaching a verdict. *See Brooks*, 323 S.W.3d at 898–99. Based on all of the evidence presented at trial, viewed in the light most favorable to the verdict, we hold that a rational jury could have found the essential elements of aggravated assault beyond a reasonable doubt and also could have found against appellant on the

self-defense issue beyond a reasonable doubt by disbelieving his evidence. *See Saxton*, 804 S.W.2d at 914; *Denman v. State*, 193 S.W.3d 129, 132–33 (Tex. App.–Houston [1st Dist.] 2006, pet. ref'd).

We overrule appellant's first point of error.

## CHARGE ERROR

In his second point of error, appellant contends that "the trial court's charge failed to instruct the jury [that] self-defense applied to both the charged offense of murder as well as the lesser included offense of aggravated assault for which the appellant was found guilty." Essentially, appellant argues that, by acquitting him of the murder charge, the jury found in his favor on the self-defense charge, but was led to believe by an incorrect jury charge that self-defense did not apply to the lesser-included offense of aggravated assault. Further, appellant contends that he suffered egregious harm as a result of the asserted charge error.

### Standard of Review

In analyzing a jury-charge issue, we first determine if error exists. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g); *Tottenham v. State*, 285 S.W.3d 19, 30 (Tex. App.–Houston [1st Dist.] 2009, pet. ref'd). Only if we find error do we then consider whether an objection to the charge was made and analyze for harm. *Tottenham*, 285 S.W.3d at 30; *see also Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) ("The failure to preserve jury-charge error is not a bar to appellate review, but rather it establishes the degree of harm necessary for reversal.").

"The degree of harm necessary for reversal depends upon whether the error was preserved." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App.

1996). When, as here, the charge error is not preserved "and the accused must claim that the error was 'fundamental,' he will obtain a reversal only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171.

■ Fundamental errors that result in egregious harm are those that affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect his defensive theory." *Id.* at 172. When considering whether a defendant suffered egregious harm, the reviewing court must consider: (1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* at 171. The reviewing court must conduct this examination of the record to "illuminate the actual, not just theoretical, harm to the accused." *Id.* at 174.

### The Charge

Relevant portions of the murder portion of the jury charge provide as follows:

> Our law provides that a person commits the offense of murder if he intentionally or knowingly causes the death of an individual; or if he intends to cause serious bodily injury and intentionally or knowingly commits an act clearly dangerous to human life that causes the death of an individual
>
> \* \* \* \*
>
> You are instructed that you may consider all relevant facts and circumstances surrounding the death, if any, and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense, if any.

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of August 2011, in Harris County, Texas, the defendant, Adrian Aaron Mendez, Jr., did then and there unlawfully, intentionally or knowingly cause the death of Jacob Castillo, by stabbing Jacob Castillo with a knife, or
>
> If you find from the evidence beyond a reasonable doubt that on or about the 6th day of August, 2011, in Harris County, Texas, the defendant, Adrian Mendez, Jr., did then and there unlawfully intend to cause serious bodily injury to Jacob Castillo, and did cause the death of Jacob Castillo by intentionally or knowingly committing an act clearly dangerous to human life, namely, by stabbing Jacob Castillo with a knife, then you will find the defendant guilty of murder, as charged in the indictment.

Relevant portions of the aggravated assault portion of the charge provide as follows:

> You are further instructed that before a person can be guilty of murder he must have intentionally or knowingly caused the death, or he must have intended to cause serious bodily injury and have intentionally or knowingly committed an act clearly dangerous to human life that caused the death of the deceased. Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, or if you are unable to agree, you will next consider whether the defendant is guilty of the lesser included offense of aggravated assault
>
> A person commits the offense of assault if the person intentionally or knowingly causes bodily injury to another.

A person commits the offense of aggravated assault of he commits assault, as hereinbefore defined and the person: (1) causes serious bodily injury to another; or (2) uses or exhibits a deadly weapon during the commission of the assault. Therefore, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of August, 2011, in Harris County, Texas, the defendant Adrian Aaron Mendez, Jr., did then and there unlawfully, intentionally or knowingly cause serious bodily injury to Jacob Castillo by stabbing Jacob Castillo with a deadly weapon, a knife, then you will find the defendant guilty of aggravated assault.

If you believe from the evidence beyond a reasonable doubt that the defendant is guilty of either murder on one hand or aggravated assault on the other hand, but you have a reasonable doubt as to which of said offenses he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser included offense of aggravated assault.

Relevant portions of the charge on the law of self-defense provide as follows:

Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonable believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. The use of force against another person is not justified in response to verbal provocation alone.

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force. You are not to consider whether the defendant failed to retreat.

\* \* \* \*

When a person is attacked with unlawful deadly force, or he reasonable believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, the law excuses or justifies such a person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack, as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his stand point at the time, and that he reasonably believed such deadly force was immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

In determining the existence of real or apparent danger, you should consider all the facts and circumstances in evidence before you, all relevant facts and circumstances surrounding the offense, if any, the previous relationship existing between the defendant and Jacob Castillo, together with all relevant facts and circumstances going to show the condition

of the mind of the defendant at the time of the offense, and, in considering such circumstances, you should place yourself in the defendant's position at that time and view them from his standpoint alone.

*Therefore, if you find from the evidence beyond a reasonable doubt that the defendant, Adrian Aaron Mendez, Jr., did cause the death of Jacob Castillo, as alleged,* but you further find from the evidence, as viewed from the standpoint of the defendant at the time, that from the words or conduct, or both of Jacob Castillo it reasonably appeared to the defendant that his life or person was in danger and there was created in his find a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Jacob Castillo, and that acting under such apprehension and reasonably believing that the use of deadly force on his part was immediately necessary to protect himself against Jacob Castillo's use or attempted use of unlawful deadly force, he stabbed Jacob Castillo, then you should acquit the defendant on the grounds of self-defense, or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on said occasion and under the circumstances, then *you should give the defendant the benefit of that doubt and say by your verdict, not guilty.* (Emphasis added).

If you find from the evidence beyond a reasonable doubt that at the time and place in question the defendant did not reasonably believe that he was in danger or death or serious bodily injury, or that the defendant, under the circumstances as viewed by him from his standpoint at the time, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Jacob Castillo's use or

attempted you of unlawful deadly force, then you should find against the defendant on the issue of self-defense.

## Error

■ In its appellate brief, the State does not argue that there was no error. We hold that there was, in fact, error. In *Jordan v. State*, 782 S.W.2d 524 (Tex. App.–Houston [14th Dist.] 1989, pet. ref'd), the defendant was indicted for murder, and the jury received charges on murder, involuntary manslaughter, and criminally negligent homicide, as well as instructions on the justifications of self-defense and defense of property. *Id.* at 525. The application paragraph, however, applied self-defense only to murder, and not to involuntary manslaughter, the offense of which Jordan was convicted. *Id.* at 526. The court of appeals held the trial court's failure to apply self-defense to involuntary manslaughter in the jury charge was error. *Id.* at 527 (reasoning that "[b]ecause the charge applied self-defense only to murder, the charge may have misled the jury as to the applicability of self-defense to any lesser included offenses, including involuntary manslaughter"). Similarly, in *Burd v. State*, 404 S.W.3d 64, 71 (Tex. App.–Houston [1st Dist.] 2013, no pet.), this Court found charge error "[b]ecause the charge did not apply self-defense to the lesser included offense of deadly conduct and did not otherwise inform the jury that self-defense applied to both offenses in the charge[.]"

Here, the application paragraph in the self-defense portion of the charge, as highlighted above, applied only to the offense of murder because it was the only offense that required the jury to find that appellant *"did cause the death of Jacob Castillo, as alleged."* There was no application paragraph in the self-defense portion of the charge to indicate that self-defense

also applied to the lesser-included offense of aggravated assault. As in *Burd*, we conclude that there was error in the charge "[b]ecause the charge did not apply self-defense to the lesser included offense ... and did not otherwise inform the jury that self-defense applied to both offenses in the charge[.]" *See Burd*, 404 S.W.3d at 71.

### Egregious Harm

The State argues that "[e]ven assuming there was jury charge error, the appellant fails to show that he was harmed." Because appellant did not object to the charge, we must determine whether the charge error caused him "egregious harm," by "vitally affect[ing] his defensive theory." *Almanza*, 686 S.W.2d at 172.[1] To do so, we consider (1) the entire jury charge; (2) the state of the evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* at 171.

### Jury Charge/Arguments/Other Information in Record

Because we find the issues in the first, third, and fourth prongs to be related in this case, we will discuss them together. In this case, as in *Burd*, the charge did not inform the jury that appellant should be acquitted of *both offenses* if the jury had a

reasonable doubt about whether appellant stabbed Castillo in self-defense. 404 S.W.3d at 72. "Because the charge applied self-defense to [the charged offense] but not [the lesser-included offense], the jury was misled as to the applicability of self-defense to the latter." *Id.* The *Burd* court concluded that this error weighed in favor of finding egregious harm because it significantly undermined the defendant's sole defense. *Id.* (citing *Villarreal v. State*, 393 S.W.3d 867, 876 (Tex. App.–San Antonio 2012, no pet.).

The State, however, contends that *Burd* is distinguishable because here self-defense was not appellant's sole defense; appellant also argued that he did not kill Castillo, but that Castillo died because of the treatment he received at the hospital.[2] Appellant points out that several witnesses—Haley Barry, Sergeant Halm, April Santellana, and the medical examiner—testified that appellant lived for two months after the attack, that when he was first taken to the hospital, he was expected to live, and that complications from treatment at the hospital led to his death. Appellant further argues that, through this testimony, trial counsel was following a defensive theory that attacked the cause of death of the complainant, which would

---

1. For the first time on rehearing, the State argues that we need not determine egregious harm because there was no error. Specifically, the State, citing *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998), contends that appellant cannot complain about the lack of a paragraph applying self-defense to the lesser-included offense because it is a defensive issue and defendants must request it or object to its omission, which appellant did not do. However, once the trial court included self-defense in the abstract portion of the charge, it became "law applicable to the case" and the trial court was required to apply that defensive issue properly to the case. *See Vega v. State*, 394 S.W.3d 514, 520 (Tex. Crim. App. 2013) (holding that once trial court decided to charge jury on defensive issue of entrapment,

"any defect in the charge on entrapment amounts to an error in the charge, even under *Posey*."); see also *Barrera v. State*, 982 S.W.2d 415, 416–17 (Tex. Crim. App. 1998) (holding error to include abstract self-defense instruction but fail to instruct jury to acquit if it had reasonable doubt on self-defense).

2. We note that the only relevant difference here in the charged offenses of murder and aggravated assault is that murder requires that the defendant cause a death, while aggravated assault does not. *Compare* TEX. PENAL CODE ANN. § 19.02(b)(1), (b)(2) (West 2011) (murder) with TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2016) (aggravated assault).

have supported a conviction for the lesser-included offense of aggravated assault rather than murder, without implicating self-defense. Appellant also points to argument by defense counsel wherein he stated as follows:

> Ladies and gentlemen, there is another charge in here that you could find if you believe. I'm going to just go to that real quickly just to explain it, make sure you understand that. We heard the medical examiner testify himself that, yes, Jacob Castillo could still be alive, that that is possible, if all the conditions were taken care of.
>
> More than two months passed before he actually passed away. So, if you believe that it could have been those conditions that were the main cause of the death and, yes, that he could have been alive, this should not be a murder case. The lesser included is an aggravated assault case; so you have that for your consideration, also. That's why that's there in here, just in case you're wondering.

Based on the testimony at trial and the argument of defense counsel, the State contends that self-defense was not the only defense argued by appellant, and that the jury could have acquitted appellant of the murder charge because it found that appellant died as a result of the treatment he received at the hospital, and not necessarily because it found in his favor on the self-defense issue. The State's argument ignores, however, that much of the defense's case relating to the offense itself centered on the complainant's propensity for violence and whether the appellant's conduct was reasonable under the circumstances given the complainant's actions. Self-defense was a main theory of the defense's case. No portion of the arguments by defense counsel or the State, moreover, clarified that self-defense applied to both murder and aggravated assault. Defense counsel, in fact, argued that "it's not only that the State has to *prove the murder* beyond a reasonable doubt. They also have to disprove the self-defense beyond a reasonable doubt." (Emphasis added). The State argued that appellant had not proved self-defense and asked the jury to find appellant guilty of murder. No mention was made by either side to connect the self-defense issue to the lesser-included offense of aggravated assault.

Thus, after considering the charge, the arguments of counsel, and other relevant information in the record, we conclude that these factors weigh in favor of finding egregious harm.

*Evidence*

Appellant admitted that he stabbed Castillo and Castillo died, thereby admitting each of the elements of both murder and aggravated assault. Here, as in *Burd*, there was conflicting evidence on the "hotly disputed" evidence of self-defense. *See* 404 S.W.3d at 73. Appellant testified that he had known Castillo for years and knew of his bad reputation for being violent, using guns and knives, and being in a gang. Appellant also testified that Castillo was "pissed off" when he arrived at the diesel repair shop and said that he was going to "f*** somebody up." Based on Castillo's reputation and demeanor, appellant believed that Castillo was reaching for a gun, so appellant stabbed him.

Appellant's self-defense theory did not rest solely upon his own testimony. He also presented evidence from at least five witnesses who testified that they were familiar with Castillo's reputation for carrying knives and guns and acting violently.

In contrast, the State presented evidence, through Hayley's testimony, that she saw appellant "hit" Castillo first, and that she had earlier heard appellant say that "he felt like killing somebody." All of the witnesses at the scene testified that Castillo did not have a weapon, but they all

knew that appellant was carrying a knife. The State's witnesses also contradicted appellant's witnesses, with many testifying that Castillo did not have a reputation for being violent or carrying weapons.

Therefore, we conclude that, because of the conflicting evidence on the self-defense issue, this factor also weighs in favor of finding egregious harm.

*Summary*

As explained by the *Burd* court,

[A]lthough the jury here was not expressly instructed that self-defense did not apply to the lesser included offense, the trial court's failure to apply self-defense to [the lesser-included offense] in the charge, combined with counsel's failure to clarify the applicability of the defense in closing argument, created a significant possibility that the jury was misled about the applicability of the defense to [the lesser-included offense]. Given the centrality of this to the case and the conflicting evidence on the issue, we conclude that the trial court's failure to apply self-defense to [the lesser-included offense] in the jury charge vitally affected Burd's defensive theory and deprived him of a fair trial, and thus requires reversal.

*Id.* at 74–75.

While self-defense was not the only defensive issue in this case, it was a vital defensive issue. This error in the charge was not clarified by the jury arguments, in which defense counsel urged the jury to find appellant not guilty of murder if it found in his favor on the issue of self-defense. Finally, the evidence on this vital defensive issue was hotly contested. Thus, after considering the factors set forth in *Almanza*, we hold that the charge error caused appellant "egregious harm," by "vitally affect[ing] his defensive theory." *Almanza*, 686 S.W.2d at 172. Accordingly, we sustain point of error two.

In light of our disposition of point of error two, we need not address points of error three and four and decline to do so. *See* Tex. R. App. P. 47.1 (stating that appellant court must address every issue raised and necessary to final disposition of appeal).

## CONCLUSION

We reverse the trial court's judgment and remand for further proceedings.