Opinion issued January 11, 2007


















In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00235-CR

 __________


KIMBERLY LYNN ALLEN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from County Criminal Court at Law No. 10

Harris County, Texas

Trial Court Cause No. 1148972






O P I N I O N

 A jury found appellant, Kimberly Lynn Allen, guilty of assault, and the trial
court assessed punishment at 180 days' confinement, suspended the sentence, and
placed appellant on community supervision for one year, with a $500 fine, 80 hours
of community service, and various other conditions of community supervision. In
three points of error, appellant complains that the evidence is legally and factually 
insufficient to disprove the defense of consent and the trial court failed to charge the
jury that, if the State had failed to persuade the jury beyond a reasonable doubt that
the complainant did not consent to the assault, it was required to acquit appellant. We
reverse and remand. 

Background


 Kimberly Ryan and her fiancé went to a Denny's Restaurant in the early-morning hours of December 14, 2002 after helping a friend move. When she arrived,
there were not many people in the restaurant, but she noticed three women sitting at
a table. Ryan testified that the women were so loud that her fiancé had to move to sit
closer to her so that she could hear him talk. The noise continued, so she turned
around and said "do you mind" to the "raucous" and "obnoxious" women. Appellant,
who was sitting at the other table, responded, "I'm not going to let some white
fucking bitch tell me what I'm going to do. I'm going to kick her fucking ass." Ryan
testified that she was afraid, and the "verbal assault" escalated. She called for
emergency assistance because she "felt like [she] was about to get hurt." 

 Ryan testified that the Denny's manager/waitress told the ladies that they were
going to have to leave, and appellant responded "you can't make us leave" at which
point a "tug-o-war ensued with a plate." Appellant told the waitress "you are not
going to fucking make us leave. I'm going to kick your fucking ass." The waitress
was doused with the contents of a coffee cup and appeared "shocked, frightened,
dismayed." As appellant was leaving, she walked back to Ryan's fiancé and said
"I'm not going to let a white, motherfucking, faggot tell me what to do. And just
because I take it up the ass, doesn't mean I'm going to take it from that white
motherfucker."

 Appellant walked to the front of the restaurant, and Ryan saw someone else
walk up to the front as well. Ryan testified that she "didn't hear the words that were
said, but the body language that I saw, the other person kind of reared her hands back
and, I don't know what was said but, [appellant] came around and just . . . it wasn't
a full on punch . . . she just whacked her in the side of the head" and caused her to
bleed above her eyebrow. She explained that it did not look like the other person was
preparing to hit appellant, but, instead "it was like, go ahead and hit me." The woman
did not take a swing at or hit appellant. The police arrived within seconds and took
appellant away. Ryan testified that appellant was "fighting" with the police and
"kicking in the air" and "flailing" as they led her to a patrol car. 

 Jackie Dubendorf, the complainant, testified that she and two friends arrived
at the Denny's for breakfast around 3:30 a.m. after getting off work. She was talking
with her friends when she heard voices "hollering at each other and threatening
people" on the other side of the restaurant. She heard them say, "I'm going to fucking
kill the waitress." The complainant saw the three women walk up to the cashier and
call him a "fucking faggot." The complainant felt sorry for the cashier, so she got up
and told appellant "that she wasn't impressing anybody." Appellant responded, "I
sure the fuck ain't trying to impress you. I ought to walk over there and slap the fuck
out of you." The complainant then "stood back with [her] arms out to [her] side and
said, then, slap me." Appellant hit her over the left eyebrow, which caused the
complainant's pierced eyebrow ring to rip out and bleed. The complainant ducked
down, and appellant swung at her again, and the complainant swung back making
contact with appellant. The police arrived and restrained appellant. Appellant
screamed, "Get the fuck off of me. Why aren't you jumping on that white bitch." 
The complainant watched appellant "wrestling and struggling with the police."

 Appellant was arrested and charged with misdemeanor assault. The jury was
instructed on the defenses of self-defense and consent. 

 Jury Charge Error


 In point of error three, appellant argues that the trial court erred "when it failed
to charge the jury that, if they had a reasonable doubt as to whether the defense of
consent had been [dis]proven, they were required to acquit the appellant." 

 In analyzing a jury charge issue, our first duty is to decide whether error exists. 
Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If we find error,
we then analyze that error for harm. Id. The degree of harm necessary for reversal
depends on whether the appellant preserved the error by objection. Id. When the
defendant fails to object or states that he has no objection to the charge, we will not
reverse for jury charge error unless the record shows "egregious harm" to the
defendant. Bluitt v. State, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Thus, we review alleged charge
error by considering (1) whether error existed in the charge; and (2) whether
sufficient harm resulted from the error to compel reversal. See Posey v. State, 966
S.W.2d 57, 60 & n.5 (Tex. Crim. App. 1998). When evidence from any source raises
a defensive issue and the defendant properly requests a jury charge on that issue, the
trial court must submit the issue to the jury. Mendoza v. State, 88 S.W.3d 236, 239
(Tex. Crim. App. 2002).

Error

 The jury instruction submitted to the jury stated:

 You are further instructed that it is a defense to a prosecution for
assault if the victim of the assault effectively consents to the conduct of
the actor, or the actor reasonably believed that the victim consented to
the actor's conduct.


 Therefore, if you find from the evidence, beyond a reasonable
doubt, that [appellant] struck [the complainant] with her hand; but, you
further find from the evidence that [the complainant] effectively
consented to the strike by her conduct, you will acquit [appellant] and
say by your verdict, "not guilty". 


(Emphasis added.) Appellant contends that the submitted instruction "failed to
contain any language regarding the burden of proof on the defensive issue" contrary
to section 2.03(d) of the Penal Code, which provides that, "if the issue of the
existence of a defense is submitted to the jury, the court shall charge that a reasonable
doubt on the issue requires that the defendant be acquitted." Tex. Pen. Code Ann.
§ 2.03(d) (Vernon Supp. 2006). (1) On appeal, the State concedes that "the specific
instruction paragraph above failed to comply with Section 2.03(d), [however,] the
area of the charge immediately surrounding it complied with the necessary
requirements." We disagree. The charge that the trial court submitted did not instruct
the jury that, if it had a reasonable doubt as to whether the complainant consented to
the assault, it had to acquit the appellant. See Russell v. State, 834 S.W.2d 79, 82
(Tex. App.--Dallas 1992, pet. ref'd) (although there was sufficient evidence to raise
the issue of self-defense, neither the arguments of counsel nor the court's charge
instructed the jury that it must acquit Russell if it had a reasonable doubt on the issue
of self-defense). 

 Accordingly, we hold that the trial court erred in submitting an instruction
paragraph that failed to comply with section 2.03(d). Having found error in the
court's charge, we must determine whether sufficient harm resulted from the error to
require reversal.

Preservation

 In order to preserve error relating to the jury charge there must either be an
objection or a requested charge. Vasquez v. State, 919 S.W.2d 433, 435 (Tex. Crim.
App. 1996). The Court of Criminal Appeals has interpreted articles 36.14 and 36.15
as dealing with those two distinct situations: an objection to the charge and a
requested special instruction, respectively. Frank v. State, 688 S.W.2d 863, 865
(Tex. Crim. App. 1985). Under article 36.14, the defendant is required to object and
obtain an adverse ruling to preserve any error. Vasquez, 919 S.W.2d at 435. 
However, under article 36.15, if the defendant requests a special charge, no objection
is required to preserve error. Id. Article 36.15 allows that both sides shall have a
reasonable time to present written instructions and ask that they be given to the jury. 
 Tex. Code Crim. Proc. Ann. art. 36.15 (Vernon 2006). Here, appellant notes that
she "filed" her proposed instruction prior to the trial court's charge being filed later
that same day. However, the record does not demonstrate that she actually presented
her proposed instruction to the judge and asked that it be given to the jury. Moreover,
the record does not show that the trial court had an opportunity to "refuse" the
proposed instruction. Accordingly, appellant must show that the charge error resulted
in "egregious harm" to her. See Bluitt, 137 S.W.3d at 53.

Harm

 Jury charge errors to which there is no objection are subject to review under the
standards established by Almanza, 686 S.W.2d at 160. Therefore, error, if any, does
not require reversal unless it was so egregious and created such harm that appellant
was denied a fair trial. Id. at 171. The actual degree of harm must be assayed in light
of the entire jury charge; the state of the evidence, including the contested issues and
the weight of probative evidence; the argument of counsel; and any other relevant
information revealed by the record of the trial as a whole. Id. Errors resulting in
egregious harm are those that affect the very basis of the case, deprive the defendant
of a valuable right, or vitally affect a defense theory. Hutch v. State, 922 S.W.2d 166,
171 (Tex. Crim. App. 1996). Considering the Almanza factors, we conclude that the
error resulted in egregious harm because it effectively shifted the burden of proof on
the defense theory.

 (1) Entire Jury Charge

 The State argues that "the area of the charge immediately surrounding [the
consent charge] complied with the necessary requirements." Here, the paragraph
before the consent paragraph instructed the jury on self-defense. The self-defense
application paragraph instructed the jury to find appellant not guilty if it had a
reasonable doubt on the issue. The charge then instructed the jury on the consent
defense at issue and excluded the reasonable doubt language. The State contends
that, read together with the general instruction that, "in the event you have a
reasonable doubt as to the defendant's guilt after considering all the evidence before
you, and these instructions, you will acquit the defendant and say by your verdict,
'Not guilty,'" these "inherently connected paragraphs sufficiently instructed the jury
regarding the State's burden of proof and that any reasonable doubt on a material
issue mandated her acquittal." We disagree. A reasonable juror comparing the
instructions on two defenses, only one of which instructed that the State had the
burden to overcome any reasonable doubt regarding defense, would likely conclude
that there were different burdens on the two defenses. In fact, the error in the charge
effectively shifted the burden to appellant to prove the defense that the complainant
consented to the assault. 


 (2) State of the Evidence and Contested Issues

 It is undisputed that appellant slapped the complainant. Appellant contends
that the statement made by the complainant--"then slap me"--and the testimony of
several witnesses who testified that the complainant urged "go ahead," "come on,"
"slap me," and " hit me" imply that the complainant consented to the assault. The
evidence reveals that appellant threatened the complainant before she told appellant
to slap her. While both self-defense and consent were submitted to the jury, consent
was the issue much more contested. The evidence also showed that appellant's words
and actions were combative and provocative throughout the incident. 

 (3) Counsel's Argument

 In appellant's trial counsel's closing argument, he commented on the burden
of proof and the inconsistencies in the charge as follows:

 I look forward to hearing [in the State's argument] why the law of
consent is not going to apply in this case. She gets to speak last. It's her
burden of proof and it's an onerous burden. It's all the way beyond a
reasonable doubt, if you will recall. She's got to prove it and you must
be more solidly convinced than you would be if you were across the
street trying to take someone's child away from them [in family court]. 
Its [sic] not just clear and convincing evidence. It's beyond all
reasonable doubt. It says it two or three different ways in this charge. 
It says, if you do not believe beyond a reasonable doubt. Then, it says
it another way. It says, if you have a doubt. And, not only does she
have to prove that there was a striking, of course, no one is arguing
about that, but the defenses have to be disproved beyond a reasonable
doubt. 


The State confused matters in its closing argument when it stated "ladies and
gentlemen, it is up to you to decide if it's reasonable to believe that [the complainant]
walked up there wanting to get hit. Is that reasonable? That is what consent is all
about. That's what the law says." The defense objected and said, "That's not what
the law says" to which the trial court responded, "You will have, in the court's
charge, what the law says." As we have held, the court's charge did not accurately
reflect "what the law says." Appellant's counsel argued the correct law without
drawing an objection and objected to the prosecutor's argument that was completely
at odds with the jury charge. However, the jury was put in the position of having to
decide whether to follow the incorrect charge, as the trial court instructed it to do, or
follow the correct argument of appellant's counsel. 

 (4) Whole Record

 Finally, while deliberating, the jury certified that it disagreed about the
statements of a witness, and it asked for a part of the transcript to be read back to it. 
Specifically, the jury wanted to hear the testimony of one of the witnesses to the
altercation concerning "remarks when [the complainant] approached [appellant]
before and during the assault." (2) This question further illustrates that the central issue
was whether the complainant consented to the assault.

 The error in this case did occur in the jury instruction concerning the most
contested issue in the case. The State's argument concerning consent was clearly
contrary to both the correct charge and the incorrect charge given. It further
effectively shifted the burden of proof on consent, especially in light of the self-defense application paragraph. 

 Upon review of the entire jury charge; the state of the evidence, including the
contested issues and the weight of probative evidence; the argument of counsel; and
any other relevant information revealed by the record of the trial as a whole, we hold 
the error was so egregious and that it created such harm that appellant was denied a
fair trial. See Almanza, 686 S.W.2d at 171. The contradictory language in the charge
created confusion by effectively shifting the burden on the most contested defensive
theory. 

 We sustain point of error three.

Sufficiency


 In points of error one and two, appellant argues that the evidence was legally
and factually insufficient to disprove the defense of consent. (3)


Standard of Review

 In determining the legal sufficiency of the evidence in regard to a fact finder's
rejection of a defensive issue, we review the evidence in a light most favorable to the
prosecution to determine whether any rational fact finder that found the essential
elements of the offense beyond a reasonable doubt would have found against
appellant on the defensive issue beyond a reasonable doubt. Tex. Pen. Code Ann.
§ 2.03(d); Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). Although
our analysis considers all evidence presented at trial, we may not re-weigh the
evidence or substitute our judgment for that of the fact finder. King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000). This standard of review is the same for
both direct and circumstantial evidence cases. Fitts v. State, 982 S.W.2d 175, 185
(Tex. App.--Houston [1st Dist.] 1998, pet. ref'd). If there is evidence that establishes
guilt beyond a reasonable doubt and the jury believes the evidence, the judgment
must be affirmed. Id. 

Defense of Consent

 Appellant asks us to consider (1) whether a rational trier of fact could have
found, beyond a reasonable doubt, that the complainant did not consent to appellant's
striking her and alternatively (2) whether the evidence, when viewed in its entirety
in a neutral light, is too weak to support the jury's implied finding against the defense
of consent. 

 Assault is defined as intentionally or knowingly causing bodily injury to
another. Tex. Pen. Code Ann. § 22.01(a) (Vernon Supp. 2006). Consent as a
defense to prosecution requires the victim's effective consent, or, if the conduct did
not threaten or result in serious bodily injury, the actor's reasonable belief that the
victim consented to the conduct. Id. § 22.06(1) (Vernon Supp. 2006). The defense
of consent requires effective consent which is defined by the Texas Penal Code as
consent by a person legally authorized to act. Id. § 1.07(a)(19)(A) (Vernon Supp.
2006). Consent is not effective when induced by force, threat, or fraud. Id. The issue
of consent as a defense is an issue of fact to be determined by a jury. See Saxton, 804
S.W.2d at 913 (The "issue of self-defense is an issue of fact to be determined by the
jury."). 

 If the issue of the existence of a defense is submitted to the jury, the trial court
shall charge that, if there is a reasonable doubt on the issue, the defendant should be
acquitted. Tex. Pen. Code Ann. § 2.03(d). After the issue has been properly raised
by the evidence, the State is not required to disprove a defense beyond a reasonable
doubt. Saxton, 804 S.W.2d at 913. It is the defendant's burden to produce evidence
raising the defense, after which the burden shifts to the State. Id. The burden placed
on the State is not one of producing evidence to refute the defensive claim, but rather
to prove its assault case beyond a reasonable doubt. Id.

 Here, it is undisputed that appellant slapped the complainant. Appellant
contends that the statement made by the complainant--"then slap me"--and the
testimony of several witnesses who testified that the complainant urged "go ahead," 
"come on," "slap me," and "hit me" conclusively prove that the complainant
consented to the assault. The State argues that statements such as "hit me" are not
forms of consent when the alleged consent occurred after the assaultive conduct
began. The evidence reveals that appellant threatened the complainant before she
told appellant to slap her. We agree that this evidence supports an implied finding
by the jury that any consent given by the complainant was not effective.

 Viewing the evidence in the light most favorable to the jury's verdict, we
conclude that a rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt. Accordingly, we hold that the evidence is legally
sufficient to support appellant's conviction. 

 We overrule point of error one. 






 Conclusion


 We reverse the trial court's judgment and remand.

 

 George C. Hanks, Jr.

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Hanks.


Publish. Tex. R. App. P. 47.2(b).

1. However, the State does not have to produce evidence disproving or refuting a
defensive claim, even if all evidence supporting the defense was uncontradicted and
consistent. Saxton v. State, 804 S.W.2d 910, 912 (Tex. Crim. App. 1991). The Court
of Criminal Appeals held that Penal Code section 2.03(d) "addresses the mechanics
of the jury charge vis-a-vis the State's burden of proof when a defensive issue has
been raised by the evidence, rather than the sufficiency of the evidence." Id. at 913.
2. "Happy's remarks when Jackie approached Kimberly before and during the assault."
3. Having already held that there was reversible error warranting a remand, we need not
address appellant's second point of error regarding factual sufficiency.