# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00501-CR

---

**Ruben Brador, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CR-21-500681, THE HONORABLE DIMPLE MALHOTRA, JUDGE PRESIDING

---

## O P I N I O N

Ruben Brador was charged with the offense of assault family violence. *See* Tex. Penal Code § 22.01. The jury found him guilty of the charged offense. He elected to have the trial court assess his punishment. The trial court sentenced him to one year in jail but placed him on community supervision for two years. *See id.* §§ 12.21, 22.01(b). In three issues on appeal, Brador contends that there was error in the jury charge. We will reverse the trial court's judgment of conviction and remand for further proceedings.

## BACKGROUND

Early in the morning on June 8, 2021, Richelle Soat called 911 seeking help from Emergency Medical Services. During the call, she stated that her face had been slammed into her kitchen island and was bleeding. She also told the dispatcher that she had been delaying

calling 911 because she loved the person who caused her injuries and told the dispatcher that the person who caused the injuries was intoxicated and on drugs.

In response to the 911 call, police officers drove to Soat's apartment. When the officers arrived, Soat had dried blood on her face, and blood was on the floor and on the door jamb. Soat told the officers that she had not wanted to call 911. She related that Brador had become angry during a prior interaction when his phone stopped working, that he left her apartment, and that she decided not to chase after him. Further, she recalled that she blocked his cellphone number in her phone after he left but that he later returned to her apartment after realizing that she had blocked his number. Additionally, she stated that he grabbed her head and "slammed" it on the island. After the incident, he told her he was sorry and said he loved her. One officer asked Soat if she was on any medications or drugs because she was "all over the place" while relating what happened, and she admitted to being on a mood stabilizer. When the officer later asked if she was on methamphetamine or cocaine, she responded by saying she had not taken anything "that would keep [her] from telling the truth." While she talked with the officers, paramedics arrived to evaluate and treat her. The police later located and arrested Brador, and he was charged with the offense of assault family violence.

During the trial, the State called the following witnesses: Soat, one of the police officers who responded to the 911 call, a paramedic who evaluated Soat, and a victims' services counselor who testified about the dynamics of domestic abuse. In his case-in-chief, Brador elected to testify and called the following witnesses: Soat, the same police officer who testified for the State, another officer who responded to the 911 call, and two individuals who knew both Brador and Soat. In addition, the following exhibits were admitted into evidence: a recording of the 911 call made by Soat, body-camera footage from one of the officers who responded to the

2

911 call, photos of Soat's apartment and her injuries taken after she called 911, a recording of a 911 call made by one of Soat's neighbors concerning an incident in March 2021, photos of injuries that Soat allegedly sustained during that incident, a recording Brador made with his phone in December 2021 documenting another incident between Brador and Soat, and a report prepared by the responding paramedics.

In her testimony, Soat explained that she was dating Brador at the time of the alleged offense, that she was five feet eight inches tall, and that he was six feet three inches tall. She also described the hours leading up to the incident. Specifically, she testified that she went to meet a photographer downtown and that around midnight she felt like people were following her. She decided to go home, and Brador came over to her apartment after she arrived. She told him about feeling like she had been followed and was hoping that he would comfort her, but he insulted her instead and told her she was overreacting. She started crying, and he started yelling at her. Brador got angry after she told him to call an Uber and leave.

Soat denied hitting Brador, pushing him, or otherwise physically contacting him that night. She testified that the argument turned physical, that he attacked her, that he grabbed her by the back of her neck and head, and that he "spun [her] around into the kitchen island" and forced her face onto the island. When describing the force used, she related that she was either "grabbed and slammed" or pushed down. She denied falling before or after the assault. According to Soat, the incident caused her nose to bleed, and Brador tossed her a paper towel before leaving. She was scared he might retaliate against her, so she delayed calling 911 for forty-five minutes before ultimately deciding to call.

Soat described her interaction with the police and remembered that she was anxious and scattered at the time due to the assault. When talking with the police, she admitted

3

that she had had a few drinks and had taken medication for her anxiety. She agreed that she was not supposed to drink alcohol when taking her mental-health medication. She testified that her medication did not affect her balance or cause her to be angry. She explained that she had panic attacks and that they made it difficult for her to speak and think, and she admitted that alcohol probably did not help those issues. Regarding her injuries, she related that her nose was fractured, that she had to get stitches, and that the bruising lasted for weeks.

In her testimony, Soat also discussed other incidents of domestic abuse. She testified that in March 2021 Brador pulled her by her hair, dragged her across the floor, and placed her in a chokehold that prevented her from breathing. She remembered having rug burns on her back and bruises on her arm from that incident. Additionally, she mentioned that he stopped abusing her when one of her neighbors called 911. A recording of the 911 call was admitted into evidence. On the recording, a neighbor said he heard fighting in a nearby apartment and reported that the man involved in the incident was leaving and that the woman had been hit. Photos of Soat's injuries from that incident were admitted into evidence and showed abrasions on her back and arms.

Even though she admitted to defending herself against Brador in other incidents, Soat testified that she was never the first aggressor and that she would "lay hands on him" only when he got physical first. Further, she related that she continued to be in a relationship with him after the incident because she felt trapped emotionally. When asked if she sent a Facebook message to him stating that she was sorry and that she had lied, she said that she did not remember sending that and that if she did, it was because she was not in a "right state of mind" and felt "very alone" at the time. She agreed that she was "lying about lying" about the incident. She also testified that she would say things that she did not mean because she wanted to be loved

4

and because she feared retaliation by him. She asserted that her account of the assault at issue was truthful.

Although Soat explained that she stopped seeing Brador in October 2021, she also admitted that she invited him to her apartment in December 2021. She testified that she had wanted to tell him that she had started seeing someone else. During her cross-examination, a video recording made by Brador of their interaction in December was admitted into evidence. On the recording, she pleaded with him to show her his phone and told him that she would give him anything that he wanted if he would show her his phone. The video also depicts him telling her that he was leaving and her grabbing on to him, keeping him from leaving, and trying to take his phone from him. During this exchange, she went to the ground and grabbed and held on to multiple parts of his body to keep him from leaving as he backed away, and she tried to pull him down to the ground. He again told her that he was trying to leave and then said, "I am trying to leave but she won't let me leave. Let me go." Quickly thereafter, he yelled, "She is biting me" before getting away.

When discussing the recording, Soat agreed that Brador asked her multiple times to let him leave and that she was grabbing him, but she denied trying to hit him. Further, she acknowledged that she did not remember the incident but did remember having to post bond the following day for an assault charge. However, she also explained that the charge against her was later dismissed and that the recording did not show the entirety of their interaction. She believed that he provoked her that night to record her in an attempt to get his own charges dismissed.

One of the officers who responded to the 911 call about the incident in question testified that Soat had blood on her face, shirt, and hands, but he also explained that the blood had dried, indicating that it had been "there for [a] certain amount of time." When describing

5

Soat, the officer recalled that she was anxious and talking fast, had difficulty expressing what had happened, talked around the events, and could not recall what happened in chronological order; however, he said that she spoke clearly, that he was able to understand her, that it was common for a victim not to be calm and collected, and that she did not appear to have any issues with her balance. The officer agreed that Soat admitted to being on a mood stabilizer, but he did not know if she was on any other medication. Further, the officer admitted that he had agreed with a statement made by his partner that Soat was "high as a kite" because of how she was acting. At Soat's apartment, the officer asked her if she was under the influence of medication because of her behavior and because she could not directly answer the questions he asked.

Concerning Soat's injuries, the officer testified that the laceration on her nose had stopped bleeding but that she appeared to be in pain. Additionally, he explained that the injury to her nose could have been caused by her head being slammed onto the countertop as Soat claimed, but he also believed it could have been caused by her hitting the corner of an object. Although the officer agreed that there was probable cause to arrest Brador, the officer also admitted that he did not know if Brador caused the injury.

Another officer who responded to the scene testified that he stated that night that Soat was "high as a kite." Further, the officer observed Soat's slurring her speech and being unable to answer questions asked of her. The officer also explained that victims of domestic abuse can seem scattered and jump around topics and that there are prescription medicines that can cause a person to jump around as Soat did when telling a story. The officer agreed that lack of coordination can be an effect of intoxication.

One of the responding paramedics testified that Soat told him that Brador slammed her face into the kitchen island and that the laceration of the nose was consistent with

6

Soat's description of that event. Additionally, the paramedic related that the laceration was Soat's chief complaint and that she needed stitches for the wound. Further, the paramedic explained that the medical report from the incident stated that Soat was walking on her own and did not have an unsteady gait. The only injury listed in the report was the laceration to her nose, and the report reflected that she was not in any distress.

In his testimony, Brador described Soat as wanting to control whom he talked to and where he could go. Further, he related that he could not communicate with her when she drank alcohol and that she made poor decisions when she was drunk. More specifically, he testified that she would get upset with him and physically assault him by punching him on his head. He explained that he did not call 911 during these events because he loved her.

Regarding the incident in question, Brador testified that Soat texted him at 3:00 a.m. and asked him to come over to her apartment. When he arrived, he noticed that she was "annihilated drunk," was stumbling, and was describing an incident from earlier in the night that did not make sense to him. She became angry when she thought that he did not believe her, asked him to delete contacts on his Facebook page for people she did not like, and got upset when he refused. He decided to leave and gathered his belongings and his dog, but she pushed him into a wall and started punching his chest before punching his head. He told her to get off him and "went like this, she of course off balance she literally turns around, falls forwards, hits her nose right there on the island." He clarified that he "shoved her off" him and that she lost her balance, stumbled, and went toward the island. He admitted that he did not have any visible injuries from her assault.

Brador denied grabbing Soat's head or forcing her head to hit the island. He testified that he did not intend for her to hit the island at all, was just "pushing her off" him, and

7

did not think he pushed her very hard. He also denied wanting to hurt her. While seeing her fall, he first thought she had hit her hand rather than her head and did not see blood right away. After he retrieved his dog from her bedroom, he noticed blood and a cut on her nose. Concerning the events that happened next, he explained that he tried to help her clean the wound and stayed at the apartment for an additional thirty minutes. However, he testified that he eventually had to leave because she kept threatening him; he admitted that he did not call 911. He recalled that Soat later told him that she called the police that day because he decided to leave her apartment.

In his testimony, Brador explained that he filmed other incidents between them after Soat gave a false statement to the police. He denied ever being the first aggressor and said she was the primary aggressor in the relationship and would assault him. Although he acknowledged that he did not report the abuse, he explained that he did not do so because he did not want to cause problems for her.

When discussing the earlier March 2021 incident in which a neighbor called the police, Brador related that the injuries Soat sustained were not caused by him dragging her but by her holding onto his leg while he tried to leave the apartment. He denied hitting her and trying to choke her during the incident. He admitted that he left the scene but stated that he came back to talk with the police. He also admitted that he was arrested and charged with assault for that incident and that the case was still pending.

Brador discussed another incident in which Soat started hitting her head on a window at a hotel, which resulted in the hotel staff kicking them out. Later that day, she took off her clothes at his apartment and proceeded to "destroy" the inside of his apartment. Then she rolled on the ground crying and screaming before she started swinging at him. The police

8

arrived at his apartment, and he told them that he did not want to press charges and instead just wanted her out of his apartment.

Next, one of Soat and Brador's friends testified that Soat did not have a good character and that she had a reputation for being aggressive and violent at bars. Soat's former employer explained that Soat was not very nice to Brador, was jealous of other girls, liked to drink a lot, and was an aggressive person. When asked to rank Soat's level of aggressiveness, the employer placed Soat in the maximum possible category.

After both sides rested, the trial court submitted to the jury a charge setting out the elements of the offense of assault family violence, applying the law to the allegations at issue in this case, and containing instructions pertaining to self-defense. The jury found Brador guilty of the charged offense. Following a sentencing hearing, the trial court rendered its judgment of conviction. Brador appeals his conviction.

**GOVERNING LAW**

In his appellate issues, Brador contends that there were errors in the self-defense instruction in the jury charge. Chapter Nine of the Penal Code contains several defenses to prosecution, including the provision governing self-defense, which provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." Tex. Penal Code §§ 9.02, .31(a). "'Reasonable belief' means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42). "Self-defense is a justification for otherwise unlawful conduct." *Torres v. State*, 7 S.W.3d 712, 714 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd).

9

When preparing a jury charge, a trial court must deliver to the jury a written charge distinctly setting forth the law applicable to the case. Tex. Code Crim. Proc. art. 36.14. Jury instructions must apply the law to the facts adduced at trial and conform to the allegations in the indictment. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). "Jury charges contain both an abstract section and an application section." *See Torres v. State*, 691 S.W.3d 138, 147 (Tex. App.—Austin 2024, pet. ref'd). The abstract portion of a charge serves as a glossary to explain the meanings of concepts and terms used in the application paragraph of the charge but "does not authorize conviction on its own." *Id.* "The application paragraph is the portion of the jury charge that applies the pertinent penal law, abstract definitions, and general legal principles to the facts and indictment allegations of a given case." *Id.* "The application portions allow the jury to convict a defendant of a particular offense." *Id.*

When addressing an issue regarding an alleged jury-charge error, appellate courts must first decide whether there is error before addressing whether the alleged error resulted in any harm. *See Thanh Cuong Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). In reviewing a charge for alleged error, we examine the charge as a whole rather than as a series of isolated and unrelated statements. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995).

**DISCUSSION**

In three issues on appeal, Brador contends that the trial court erred by (1) failing to properly instruct the jury on the burden of proof for self-defense and when an acquittal is warranted, (2) including a provocation instruction, and (3) failing to include an instruction on the

definition of provocation. Further, he contends that these errors were harmful and should result in a reversal of his conviction.[1]

*Self-defense*

The relevant parts of the abstract pertaining to self-defense provided as follows:

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.
>
> When a person is attacked, or an attempt is made to attack such person, with unlawful force and there is created in the mind of such person a reasonable expectation of fear of some bodily injury, then the law excuses or justifies such person in resorting to force to the degree reasonably believed to be immediately necessary, viewed from the actor's standpoint at that time, to protect themselves from attack or attempted attack.

---

[1] In its brief, the State suggests that Brador's attorney's participation in helping to prepare the charge and failure to object to any alleged errors should preclude this Court from addressing these issues. The Court of Criminal Appeals has indicated that judicial estoppel can prevent a party from arguing on appeal about a jury-charge error when the record shows that the defendant requested the instruction and then indicated his agreement when it was explained that the instruction had been included. *See Ruffins v. State*, 666 S.W.3d 636, 643 (Tex. Crim. App. 2023); *see also Druery v. State*, 225 S.W.3d 491, 506 (Tex. Crim. App. 2007) (concluding that defendant could not present jury-charge issue when he "induced the alleged error on which he now complains" by requesting that instruction not be given). Similarly, the Court of Criminal Appeals has concluded that a defendant was prohibited from presenting an appellate claim concerning the inclusion in the charge of instructions for an unindicted offense where the record showed that "appellant had some responsibility for the jury instruction" by helping "prepare the charge, including" the instruction at issue. *See Woodard v. State*, 322 S.W.3d 648, 659 (Tex. Crim. App. 2010). However, nothing in the record reflects that an analogous set of exchanges occurred in this case. In the charge conference, the trial court stated that both sides had "a copy of the final charge with the amendments that have been agreed upon," but the record does not reflect what the amendments were or whether they were made at Brador's suggestion. Although Brador did state that he had no objection to the final charge, the Court of Criminal Appeals has explained that an "affirmative denial of objection" to a jury charge is "equivalent to a failure to object" and does not prevent appellate review of a jury-charge issue. *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). Failures to object typically elevate the harm that must be shown to warrant a reversal but do not preclude appellate courts from addressing jury-charge issues. *See Torres v. State*, 691 S.W.3d 138, 147 (Tex. App.—Austin 2024, pet. ref'd). Accordingly, Brador is not estopped from presenting his appellate claims.

11

. . .

[T]he term "reasonable belief" as used herein [] mean[s] a belief that would be held by an ordinary or prudent person in the same circumstances as the Defendant.

The application portion of the charge provided as follows:

Now if you find and believe from the evidence beyond a reasonable doubt that the Defendant Ruben Brador, on or about the 8th day of June 2021, in Travis County, Texas did then and there intentionally, knowingly or recklessly cause bodily injury to Richelle Soat, a family or household member or an individual with whom the Defendant had a dating relationship, by seizing Richelle Soat on and about the head with the Defendant's hand or by pushing Richelle Soat on or about the head with the Defendant's hand, but you further find from the evidence that at the time the Defendant was under attack or attempted attack from the complainant Richelle Soat and that the Defendant reasonably believed that such force as he used was immediately necessary to protect himself against such attack or attempted attack and so believing, he pushed Richelle Soat on or about the head with the Defendant's hand and that such force was not deadly force used by the Defendant, then you will acquit the Defendant and say by your verdict not guilty.

When asserting that there was error in the portions of the jury charge pertaining to self-defense, Brador argues that the charge did not properly and fully instruct the jury concerning when they should acquit a defendant. Although Brador acknowledges that the charge directed the jury to acquit him if it "found from the evidence" that he acted in self-defense, he emphasizes that neither the abstract nor the application sections instructed the jury about the State's burden concerning self-defense or specified that the jury must acquit if it had "a reasonable doubt thereof" regarding whether he acted in self-defense. He contends that failing to include instructions concerning these concepts constituted jury-charge error.

We agree. Self-defense is a defense to prosecution. *Saxton v. State*, 804 S.W.2d 910, 912 n.5 (Tex. Crim. App. 1991); *see also* Tex. Penal Code § 9.31 (setting out elements of defense). The Penal Code requires that jury instructions pertaining to defenses to prosecution

12

include language stating "that a reasonable doubt on the issue requires that the defendant be acquitted." Tex. Penal Code § 2.03(d). Further, the defendant has only the burden of producing evidence that raises self-defense; the State still has the "burden of persuasion to disprove the raised defense." *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003).

Consistent with the law set out above, the pattern jury charge for self-defense suggests that the abstract portion of the charge include a burden-of-proof instruction stating as follows: "The defendant is not required to prove self-defense. Rather, the state must prove, beyond a reasonable doubt, that self-defense does not apply to the defendant's conduct." *See Committee on Pattern Jury Charges*, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Justification Defenses* ("CPJC") ch. 9.10 (2024); *see also Lozano v. State*, 706 S.W.3d 429, 458 (Tex. App.—Austin 2024, no pet.) (relying on pattern jury charges when addressing jury-charge error). Regarding the application section, the pattern jury charge recommends including an instruction requiring the jury to consider whether the State has proved beyond a reasonable doubt that "the defendant did not believe his use of force was immediately necessary to protect himself against [name]'s use . . . of unlawful force" or that "the defendant believed his use of force was immediately necessary to protect himself, but the defendant's belief was not reasonable" and then include an instruction specifying that the jury "must find the defendant 'not guilty'" if the jury "find[s] that the state has failed to prove, beyond a reasonable doubt, either element." *CPJC*, ch. 9.10.

Arguably there is likely much overlap between an instruction that requires a jury to acquit if it had a reasonable doubt as to whether self-defense applied and an instruction specifying that the State had to prove beyond a reasonable doubt that self-defense did not apply. *See Luck v. State*, 588 S.W.2d 371, 375 (Tex. Crim. App. 1979) (determining that there was no

13

error from omission of instruction stating that State had to disprove beyond reasonable doubt that self-defense applied where charge did include instruction that jury had "to acquit appellant if they believed that he was acting in self-defense or . . . had a reasonable doubt thereof"). In fact, the Court of Criminal Appeals has explained that the effect of requiring the jury charge to direct the jury to acquit if it has a reasonable doubt about self-defense is to require the State to disprove self-defense. *Id.* However, as Brador points out, the jury charge in this case neither instructed the jury that the State had to disprove self-defense beyond a reasonable doubt nor that the jury had to acquit if it had a reasonable doubt as to self-defense.

Viewing the charge as a whole, we conclude that the trial court erred by failing to include instructions specifying either that reasonable doubt concerning self-defense must result in the jury acquitting Brador or that the State had the burden to show beyond a reasonable doubt that self-defense did not apply. *See Scott v. State*, No. 05-22-00113-CR, 2024 WL 445942, at *3 (Tex. App.—Dallas Feb. 6, 2024, no pet.) (mem. op., not designated for publication) (noting that charge failed to include "instruction that properly places the burden of proof on the State to show beyond a reasonable doubt that appellant was not acting in self-defense"); *Rivas v. State*, 486 S.W.3d 640, 651 (Tex. App.—San Antonio 2016, pet. ref'd) (concluding that jury charge was erroneous because it failed to include instruction that jury must acquit defendant if it had reasonable doubt on issue of self-defense); *Russell v. State*, 834 S.W.2d 79, 82 (Tex. App.—Dallas 1992, pet. ref'd) (same).

Having determined that there was error in the jury charge, we must now consider whether Brador was harmed by the error. *See Torres*, 691 S.W.3d at 151. The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd).

14

If no objection was made, as in this case, a reversal is warranted only if the error "resulted in 'egregious harm.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

In assessing harm, appellate courts "consider: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *See Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). However, "[t]he purpose of the egregious-harm inquiry is to ascertain whether the defendant has incurred actual, not just theoretical, harm," *Swearingen*, 270 S.W.3d at 813, and "reversal for an unobjected-to erroneous jury instruction is proper only if the error caused actual, egregious harm to" the defendant, *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). "Egregious harm is a difficult standard to meet." *Sandoval v. State*, 665 S.W.3d 496, 528 (Tex. Crim. App. 2022) (quoting *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016)). For the reasons set out below, we conclude that Brador was egregiously harmed by the omission.

*Jury Charge as a Whole*

As set out above, nothing in the jury charge specifically directed the jury to acquit if it had a reasonable doubt about the issue of self-defense or specifically addressed the State's burden with respect to self-defense; instead, the charge allowed the jury to acquit Brador only if it affirmatively found from the evidence that self-defense applied. *See Allen v. State*, 263 S.W.3d 168, 173 (Tex. App.—Houston [1st Dist.] 2007) (explaining that error in jury charge that omitted language requiring jury to acquit if it had reasonable doubt about defense "effectively shifted the burden to appellant to prove the defense"), *vacated on other grounds by* 253 S.W.3d 260 (Tex. Crim. App. 2008); *see also Scott*, 2024 WL 445942, at *3 (concluding

that inaccurate jury instruction requiring conviction if self-defense was not proven beyond reasonable doubt "impermissibly shifted the burden on the issue of self-defense from the State to appellant").

The charge also generally stated that "the burden of proof is on the State" and that "[a]ll persons are presumed to be innocent." Although the Court of Criminal Appeals noted similar instructions when it determined that a trial court did not err by failing to include an instruction that the State had to disprove self-defense beyond a reasonable doubt, the Court primarily emphasized that the charge did include an instruction directing the jury to acquit if they believed the defendant was acting in self-defense or if they "had a reasonable doubt thereof." *See Luck*, 588 S.W.2d at 375. There is no similar instruction here. Moreover, neither the burden nor the presumption instructions were linked to self-defense. Additionally, the charge included more specific instructions pertaining to those concepts that linked them to the elements of the charged offense. Specifically, the charge stated that no person can be convicted of an offense "unless each element of the offense is proved beyond a reasonable doubt," that the State "has the burden of proving the Defendant guilty and . . . must do so by proving each and every element of the charged offense beyond a reasonable doubt," and that if the State failed "to do so," the jury "must acquit the Defendant."

The charge also included an arguably more broadly worded reasonable-doubt instruction imbedded between the instructions above. That instruction stated that "[t]he presumption of innocence alone is sufficient to acquit the Defendant unless the jurors are satisfied beyond a reasonable doubt of the Defendant's guilt after careful and impartial consideration of all the evidence in the case." The Court of Criminal Appeals has determined that paragraphs containing these types of instructions "apply to the elements of the State's

16

case, not to confession-and-avoidance types of defensive issues such as self-defense." *Allen*, 253 S.W.3d at 265. "They do not amount to an abstract instruction that any reasonable doubt as to a *defensive issue* must be resolved in the appellant's favor." *Id.*

For these reasons, we must conclude that the entirety of the charge "does not ameliorate the deficiency" in the self-defense instructions and that this factor weighs in favor of egregious harm. *See id.* ("Nothing in the balance of the jury instructions inspires confidence that the jury would somehow glean that it must acquit the appellant in the event it should have a reasonable doubt with respect" to her asserted defense, "despite the deficiency in the . . . instruction."); *see also Alcoser v. State*, 663 S.W.3d 160, 169 (Tex. Crim. App. 2022) ("When self-defense is law applicable to the case, the trial court must inform the jury under what circumstances it should acquit a defendant of an offense based on self-defense."). *But see Johnson v. State*, No. 01-15-00101-CR, 2016 WL 4536954, at *9 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, pet. ref'd) (mem. op., not designated for publication) (determining that entirety of charge weighed against egregious harm from omission of instruction requiring acquittal if jury had reasonable doubt about defense).

*Arguments of Counsel*

In the last portion of his closing, Brador commented on the State's burden concerning self-defense by stating as follows: "And once we raised self-defense it is now on the State to show that self-defense was not justified in this instance." However, he did not explain that the jury should acquit if it had a reasonable doubt about whether self-defense applied or that the State had to disprove self-defense beyond a reasonable doubt. *See Allen*, 253 S.W.3d at 266

(noting that defense counsel argued that "the State carried the 'onerous burden' to explain" why defense did not apply and that "defenses have to be disproved beyond a reasonable doubt").

Similarly, in its closing argument, the State did not inform the jury that it should acquit Brador if it had a reasonable doubt about whether self-defense applied or that the State had the burden of disproving self-defense. The State emphasized that it had the burden to prove the occurrence of the offense and went over the evidence it presented to help establish the elements of the offense, but it also made arguments seemingly indicating that Brador had the burden to prove self-defense. *See Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990) (explaining that it was error for State to make misstatements regarding "the burden of proof on the issue of self-defense" by telling jury that State had to prove only elements of charged offense); *see also Torres v. State*, 751 S.W.2d 705, 707 (Tex. App.—Corpus Christi-Edinburg 1988, pet. ref'd) ("Since a defense of self-defense requires the accused to admit the commission of the offense, proof merely that appellant intentionally or knowingly killed his victim will not suffice to prove that the act was not done in self-defense."). After talking about self-defense generally in its first closing argument, the State put the burden of proving that defense on Brador, arguing, "[W] don't have that here. . . . We don't have proof from the defendant that he was attacked first." In its rebuttal, the State again gave the impression that Brador was required to prove self-defense: "So this self-defense argument *that they're trying to put forward* you guys, makes no sense." (Emphasis added.) While making statements indicating that Brador had the burden to prove self-defense, the State emphasized that he did not provide any photos or videos "to prove self-defense" despite having years "to gather that evidence."

Moreover, Brador's "case relating to the offense itself centered on the complainant's propensity for violence and whether the appellant's conduct was reasonable under

18

the circumstances given the complainant's actions." *See Mendez v. State*, 515 S.W.3d 915, 927 (Tex. App.—Houston [1st Dist.] 2017), *aff'd by* 545 S.W.3d 548 (Tex. Crim. App. 2018). And nothing in the parties' arguments clarified when the jury should acquit based on that defense. *See Russell*, 834 S.W.2d at 82 (determining that there was harm from omission of instruction directing jury to acquit if it had reasonable doubt as to self-defense because there was sufficient evidence to raise issue of self-defense and because arguments of counsel did not explain that jury must acquit if it had reasonable doubt regarding self-defense).

In light of the preceding, we conclude that the arguments of counsel did not help to ameliorate the jury-charge error and that this factor also weighs in favor of egregious harm. *See id.*; *see also Scott*, 2024 WL 445942, at *6 (noting that arguments concerning State's burden to prove guilt beyond reasonable doubt did not refer to burden to prove or disprove self-defense, which was "the burden at issue"). *But see Johnson*, 2016 WL 4536954, at *11-12 (determining that parties' arguments did not weigh in favor of egregious harm where defendant's attorney extensively argued self-defense and applied it to facts of case).

*Entirety of the Evidence*

As set out above, Brador admitted to shoving Soat and thereby causing her injuries. *See Botello v. State*, No. 04-01-00262-CR, 2002 WL 662155, at *2 (Tex. App.—San Antonio Apr. 24, 2002, no pet.) (op., not designated for publication) (concluding that admission that defendant pushed wife during fight was sufficient to raise self-defense). However, "there was conflicting evidence on the 'hotly disputed' evidence of self-defense." *See Mendez*, 515 S.W.3d at 927 (quoting *Burd v. State*, 404 S.W.3d 64, 73 (Tex. App.—Houston [1st Dist.] 2013, no pet.)). Brador testified that Soat was controlling and would become violent when

drinking alcohol and would assault him. He also gave testimony concerning incidents of alleged abuse by her and explained that she was arrested for one of those incidents.

Regarding the night in question, Brador explained that Soat was very intoxicated when he arrived at her apartment, that she was stumbling, that she became upset after he arrived, that he tried to leave, that she pushed him against a wall, that she punched his chest and head, that he shoved her to get her off him, that she stumbled, and that she hit the edge of the kitchen island. One of the investigating officers testified that Soat's injuries could have been caused by her head hitting the edge of an object, and the paramedics' report reflected that Soat was not in any apparent distress. The only injury listed in the medical records admitted into evidence was the laceration to Soat's nose. Moreover, Brador explained that he tried to help her after he noticed the injury but that he left because she kept threatening him. He testified that she later admitted to him that she decided to call the police because he left her apartment.

Additionally, a recording of a subsequent interaction between Brador and Soat was admitted into evidence and showed her preventing him from leaving her apartment, attempting to grab his phone, violently grabbing and holding on to various parts of his body, and attempting to pull him down to the ground. On the video, he also exclaimed that she bit him. Two individuals who knew Brador and Soat testified that Soat was an aggressive person, and one of the individuals also testified that Soat had a reputation for violence at bars. *See id.* (noting that "[a]ppellant's self-defense theory did not rest solely upon his own testimony" and that it also relied on testimony from witnesses explaining that alleged victim had reputation for acting violently). Although evidence concerning other possible explanations was admitted, one of the responding officers testified that Soat seemed to be altered by an intoxicating substance when the police arrived. A recording of her interaction with the police admitted into evidence showed that

she had difficulty maintaining her focus and described herself as not being on any drugs that would keep her from telling the truth. She admitted to going out and drinking that night and told the officers she took a mood stabilizer, which she was not supposed to take with alcohol.

In contrast, the State presented evidence through Soat's testimony that Brador became aggressive when she told him to leave her apartment, grabbed her by her neck and head, and slammed her head onto the kitchen island. Additionally, she related that he left the apartment after the incident. Moreover, she explained that her nose was fractured during the incident and that she had to get stitches for the laceration on her nose. She denied hitting him or otherwise touching him before he assaulted her. Further, she told the 911 operator, the paramedic, and the responding police officers that Brador slammed her head onto the kitchen island. The paramedic testified that her injuries were consistent with the described assault. Additionally, one of the responding officers and the paramedic testified that Soat did not have any issues with her balance shortly after the alleged assault. Photos and the recording of her interaction with the police showed that there was dried blood on her face and in her apartment.

Moreover, Soat testified regarding an earlier incident in March 2021 in which Brador assaulted her. She related that he dragged her by the hair and placed her in a chokehold. A recording of a 911 call made by a neighbor captured the neighbor saying that a fight had occurred and that a woman had been hit. Photos of Soat shortly after the incident showed abrasions on her back and arms. Brador admitted that he was arrested following this incident and that the charge was still pending.

"[B]ecause of the conflicting evidence on the self-defense issue, this factor also weighs in favor of finding egregious harm." *Id.* at 928; *see Johnson*, 2016 WL 4536954, at *11 (concluding that this factor did not weigh in favor of egregious harm where no evidence

21

corroborated defendant's testimony that he acted in self-defense); *see also Scott*, 2024 WL 445942, at *5 (rejecting claim that evidence factor weighed against finding of egregious harm because it was impossible to determine whether jury convicted because it disbelieved appellant's version or instead convicted because it concluded that appellant failed to prove self-defense as erroneously instructed in charge); *Torres v. State*, No. 08-12-00096-CR, 2014 WL 4639401, at *5 (Tex. App.—El Paso Sept. 18, 2014, pet. ref'd) (op., not designated for publication) (determining in case in which defendant claimed he pushed victim away after she slapped him that there was egregious harm from error in self-defense instruction, in part, because "[t]he jury was required to determine the credibility of the witnesses and resolve these conflicts in the evidence in light of the erroneous instruction which required the jury to reject Appellant's claim of self-defense if he failed to prove it" and because "the charge did not permit the jury to acquit Appellant if they had a reasonable doubt as to whether he acted in self-defense").

*Remainder of the Record*

The record does not reference any jury notes asking about how to apply the law of self-defense to the facts of this case or about when the defense should result in an acquittal. During voir dire, the trial court instructed the panel members that the State had to "prove all elements for a conviction" but did not discuss self-defense. Like the trial court, both the State and Brador explained to the panel that the State's burden was beyond a reasonable doubt but limited those discussions to the elements of the offense. The State mentioned self-defense by stating that "[n]ow it is possible, right, that a defendant may have a defense in certain instances," but seemed to place the burden of proving the defense on the defendant by stating that "there are certain things that must be met in order to meet and show this defense of self-defense." Neither

22

party discussed how juries should acquit defendants if they have a reasonable doubt about whether the defendants acted in self-defense.

Accordingly, we conclude that this factor is either neutral or weighs in favor of a finding of egregious harm.

Self-defense was a vital defensive issue in this case, for which the burden of proof was never sufficiently explained to the jury, whether in the charge or elsewhere. The error in the charge "was not clarified by the jury arguments." *See Mendez*, 515 S.W.3d at 928. The evidence pertaining to the vital defense was hotly contested. *See id.* Accordingly, after considering the relevant factors, we conclude that the charge error egregiously harmed Brador by vitally affecting his defensive theory. *See id.*

For these reasons, we sustain Brador's first issue on appeal. Because we have sustained his first issue, we need not address his remaining appellate issues. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having sustained Brador's first issue, we reverse the trial court's judgment of conviction and remand the case for further proceedings consistent with this opinion.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Crump and Ellis

Reversed and Remanded

Filed: November 14, 2025

Publish

23